UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                                     :

LERIN PIERCE,                                        :

                             Plaintiff,                    :  **ORDER**

                - against -               :
                                                       :  16 Civ. 5703 (BMC)

CITY OF NEW YORK, POLICE OFFICER     :
TAQI, POLICE OFFICER BELARDO, and      :
POLICE OFFICER MERCADO,                      :

                             Defendants.          :
----------------------------------------------------------- X

**COGAN**, District Judge.

      Before the Court are three motions [79, 84, 90], two filed by plaintiff Lerin Pierce and the third filed by defendants the City of New York, Officer Taqi, Officer Belardo, and Officer Mercado, seeking *in limine* relief in connection with the upcoming trial.  In addition, the Court had reserved decision on the admissibility of certain exhibits and testimony during the final Pre-Trial Conference.  This Order resolves all issues raised by these motions.

**The Motions *in Limine***

      1.     Plaintiff shall not reference the City of New York or John Does as defendants, as it would prejudice and confuse the jury for the same reasons several courts in this district have already found, *i.e.*, suggestion of a deep pocket and the impropriety of trying a John Doe.  See, e.g., Rasmussen v. City of New York, 766 F. Supp. 2d 399, 412 (E.D.N.Y. 2011); Jean-Laurent v. Hennessy, 840 F. Supp. 2d 529, 550 (E.D.N.Y. 2011).

      2.     For the same reasons, plaintiff is precluded from referring to Corporation Counsel as "City of New York attorneys" or "City attorneys" or any other way that indicates that they

have an affiliation with the City of New York. They are "defense counsel" or the "police officers' attorneys." See Jean-Laurent, 840 F. Supp. 2d at 550.

3. Plaintiff is precluded from suggesting a specific dollar amount to the jury. Such identification could unduly influence the jury's independent determination of compensation if it finds that defendants are liable for excessive force. See Consorti v. Armstrong World Industries, Inc., 72 F.3d 1003, 1016 (2d Cir. 1995), vacated on other grounds, 518 U.S. 1031 (1996).

4. With regard to plaintiff's arrest, to give the jury the background of how the claim on trial arose, plaintiff may testify that he was accused by a store clerk of stealing although he did not steal, and that the police then arrested him. However, should plaintiff so testify, the Court will give, at that point in the trial, a limiting instruction, instructing the jury that plaintiff's arrest was legal, that the issue of whether or not plaintiff stole property leading to his arrest is not before the jury, and that the jury should consider only whether, in connection with his arrest, the defendants used excessive force, as the Court will define it. In response, defendants, during their case, may briefly reference the fact that they had a complaint that plaintiff had stolen property and the complainant had positively identified him, and if they do, the Court will repeat the limiting instruction.

5. Defendant is precluded from offering the steak knife at trial. Whether the complaining witness advised police that plaintiff had a "cutting" tool relates to the dismissed false arrest claim; it has no bearing on the level of force necessary to stop an alleged assailant from fleeing. The use or non-use of the police car to stop plaintiff is divorced from the steak knife found on plaintiff, and the knife's later recovery is more prejudicial than it is probative under Federal Rule of Evidence 403.

6.      Plaintiff is precluded from inquiring about any disciplinary histories or other civil rights actions filed against the defendant or witness officers. These lines of questioning are inadmissible pursuant to Federal Rule of Evidence 404(b) as the information does not fall into one of the delineated exceptions and moreover is more prejudicial than probative under Rule 403. See Berkovich v. Hicks, 922 F.2d 1018, 1022-23 (2d Cir. 1991). None of the complaints were substantiated, nor is there any indication of a pattern of conduct or scheme on the part of defendants to commit the acts alleged in the complaint.

7.      Plaintiff is also precluded from mentioning the Internal Affairs Bureau ("IAB") investigation into the use of force particularly at issue in this case. Such references are inadmissible under Rule 403 as more prejudicial than probative and as having a propensity to mislead the jury. Defendants were exonerated in the investigation, but the mere mention of an investigation has the propensity to cause prejudice. Moreover, plaintiff is precluded from using the audio files of the IAB interviews as they are inadmissible hearsay subject to no exception. All of the witnesses (the two non-party complainants and plaintiff) interviewed in the IAB audio files are testifying. Should plaintiff or defendants need to use the statements in the audio as impeachment, they can all do that without reference to the statements as having been made in connection with an IAB investigation. Moreover, because the IAB investigation is not admissible, there is no need or reason for Sgt. Ming, the IAB investigator, to testify. Therefore, he is precluded from testifying regarding his investigation.

8.      Plaintiff is precluded, pursuant to Rule 403, from making reference to any unrelated examples of excessive force that have been publicized. Any claim that another individual may have against certain police officers is entirely unrelated to the allegations here. Plaintiff now argues that "[t]his is a case about being black and confronting the police, plain and

simple." Plaintiff cannot use this theory for any purpose. There is no evidence of any racial animus that has been identified to the Court to support it. Such references would be prejudicial, misleading, and irrelevant to the excessive force issue.

9.  On the topic of prior bad acts, defendant is precluded from raising plaintiff's prior arrests. In the first instance, it is internally inconsistent that defendants seek to preclude testimony regarding the arrest that precipitated the excessive force claim, but want to admit information regarding other arrests. In the second instance, as is no doubt obvious, if the arrest for theft in September 2014 is irrelevant to the excessive force, then certainly prior arrests[1] are similarly irrelevant under Rule 401. Further, defendants' arguments regarding motive and relevance under Rule 404(b) are unpersuasive and unfounded given the narrow issue to be put in front of the jury.

10. Notwithstanding the foregoing, if plaintiff begins to testify about his alleged emotional damages, as the Court expects he will, he will open the door to defendants' use of his prior arrests and his prior time in detention to rebut the amount of distress he suffered. See Banushi v. Palmer, No. 08-CV-2937, 2011 WL 13894, at *3 (E.D.N.Y. Jan. 4, 2011), aff'd, 500 F. App'x 84 (2d Cir. 2012). If defendants use this evidence, they may not inquire into the reasons for plaintiff's prior arrests. See Ramos v. Cty. Of Suffolk, 707 F. Supp. 2d 421, 424 (E.D.N.Y. 2010) (permitting defendant to question plaintiff about her prior arrests but precluding defendant from "go[ing] into what the reason for the arrest is").

11. Plaintiff is precluded from testifying as to his belief of causation or the medical diagnosis related to his injuries. It is an unremarkable proposition that testimony regarding

---

[1] Although defendants argue that convictions for theft are probative of truth-telling, there were no convictions on the theft arrests. Rather, as far as the record suggest, plaintiff accepted an adjournment in contemplation of dismissal for one and a court diversion program for another. Moreover, the traffic infractions, for which he was adjudged guilty, are entirely unrelated to the issues at bar.

4

medical diagnoses must be based on specialized knowledge pursuant to Rules 701 and 702 and is therefore outside the scope of plaintiff's knowledge. See Vogelfang v. Riverhead Cty. Jail, No. 04-CV-1727, 2012 WL 1450560, at *6 (E.D.N.Y. Apr. 19, 2012). Particularly, because the medical records are replete with indications of several other unrelated injuries, plaintiff's testimony would implicate causation issues that are for a Rule 702 expert to provide. See Barnes v. Anderson, 202 F.3d 150, 159 (2d Cir. 1999); Gierlinger v. Gleason, 160 F.3d 858, 872 (2d Cir. 1998).

12. Plaintiff failed to designate any expert witnesses and instead seeks to rely on treating doctors to testify regarding plaintiff's injuries. However, treating physicians are not experts, and plaintiff must limit his inquiry of the treating doctors to their treatment and observations alone. They may not testify as *post hoc* experts given plaintiff's failures under Federal Rule of Civil Procedure 26. Moreover, the Court's Order at the Pre-Trial Conference remains that plaintiff's self-reporting of injuries, as noted in the medical records, is hearsay and not subject to any exceptions. Accordingly, the medical records are inadmissible unless plaintiff points to particular pages and excerpts and articulates why the particular excerpts are admissible.

**Issues Left Open from the Pre-Trial Conference**

13. Plaintiff may offer the deposition testimony of Ashley Holloway, assuming she is unavailable, consistent with the rulings below.

| Transcript Designations | Admissibility |
|---|---|
| 4:9-12, 4:20-25 | Admissible |
| 5:1-17 | Admissible |
| 8:9-9:17 | Admissible |
| 9:21-10:21 | Admissible |
| 11:2-5 | Admissible |
| 11:10-12:17 | Admissible |
| 14:18-25 | Inadmissible |
| 15:4-23 | Inadmissible |

5

| Transcript Designations | Admissibility |
|---|---|
| 16:1-3 | Inadmissible |
| 17:2-3, 17:7-25 | Inadmissible |
| 18:13-19:4 | Admissible |
| 19:7-14 | Admissible |
| 19:18-21, 19:23-25 | Admissible |
| 20:1-22 & Exh. 3 | Admissible as to the transcript designations; using all 7 pictures is cumulative as the Court previously ruled at the conference. |
| 21:1-8, 21:18-23 | Admissible |
| 22:3-23 | Inadmissible |
| 23:1, 3 & Exh. 4 | Inadmissible |
| 24:2-13, 24:15-25 | Admissible |
| 25:1-12, 23-25 | Admissible |
| 29:12-30:25 | This is cumulative and repetitive of pedigree information elicited earlier; plaintiff is to pick one set. |
| 31:4-21 | Admissible |
| 31:23-33:25 | Admissible |
| 34:17-36:9 | Admissible |
| 36:20-21, 37:3-4 | Admissible |
| 37:9-38:25 | Inadmissible |
| 39:6-40:25 | Admissible |
| 41:3-5 | Admissible |
| 41:11-42:6 | Admissible |
| 43:3-22 | Inadmissible |
| 44:20-25 | Admissible |
| 45:1-8 | Admissible |
| 46:19-25 | Inadmissible |
| 49:14-15, 49:19-50:9 | Admissible |

14. Plaintiff may not offer the video he filmed or photographs he took depicting his reenactment of the incident. The reenactment video and photos are highly prejudicial, confusing,

6

misleading, and irrelevant in so many ways, and proffering them collides with well-established law regarding what constitutes valid reenactments. See Starter Corp. v. Converse, Inc., 170 F.3d 286, 297 (2d Cir. 1999).

**SO ORDERED.**

                                                                                                                _____

                                                                                                                           U.S.D.J.

Dated: Brooklyn, New York
           June 9, 2017