```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
LERIN PIERCE,                                               :
                                                            :
                              Plaintiff,                    :
                                                            :
              - against -                                   :   **MEMORANDUM**
                                                            :
THE CITY OF NEW YORK, POLICE                                :
OFFICER TAQI, POLICE OFFICER                                :   16 Civ. 5703  (BMC)
BELARDO, and POLICE OFFICER                                 :
MERCADO,                                                    :
                                                            :
                              Defendants.                   :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

During trial on June 15, 2017, plaintiff attempted several times to elicit improper expert testimony from his treating chiropractor witness, in direct contravention of this Court's prior rulings on the impropriety of such a tactic. Plaintiff, time and again, attempted to circumvent the Court's rulings, continuing to assert his disagreement with them. Because the Court had resolved multiple motions *in limine* that raised over a dozen issues within a short five-day window of time before the start of trial and because the issue of the proper contours of medical testimony is an important one, the Court sets forth the basis for its ruling in this memorandum.

## BACKGROUND

Plaintiff filed this action on October 12, 2016, against the City of New York and certain individual police officers he alleges subjected him to excessive force while effecting his arrest on September 1, 2014. During the Initial Status Conference in this matter, the Court ordered that fact discovery be completed by January 31, 2017, and that expert discovery be completed by March 15, 2017.

On January 30, 2017, one day before the close of fact discovery, the parties wrote to the Court, asking to extend discovery. Defendants advised the Court that there were problems with plaintiff's responses to interrogatories and demands to produce, which were due on January 12, 2017, but were only emailed to the defense on January 28, 2017. The Court held a discovery conference on February 3, 2017, and extended the deadlines so that fact discovery would be completed by March 6, 2017, plaintiff's expert reports would be due March 7, 2017, defendants' rebuttal reports would be due March 28, 2017, and expert depositions would be completed by April 15, 2017. Most importantly, during the conference, the Court ordered plaintiff to disclose the names of his treating physicians within ten days, something that he had failed to do previously. As the Court later learned, plaintiff identified three treating physicians, pursuant to Federal Rule of Civil Procedure 26(a)(2)(C), which is the subsection under which treating physicians are designated. The Court also later learned that plaintiff offered "reports" from all three physicians.

On February 23, the parties again wrote to the Court regarding discovery, and again the Court extended discovery, resetting the end of fact discovery for March 20, 2017. The Court further ordered that plaintiff's expert reports would be due March 21, 2017, defendants' rebuttal reports would be due April 11, 2017, and expert depositions should be completed by April 28, 2017.

Discovery closed, and on April 26, 2017, the Court set the deadlines by which the parties were to exchange witness and exhibit designations, in addition to setting the date of the final Pre-Trial Conference. Shortly after the parties filed their witness and exhibit lists on May 16, 2017, the Court received the first of what would end up being six motions *in limine* filed prior to start of trial on June 12, 2017. As relevant here, defendants' motion *in limine* asked the Court to limit

the testimony of plaintiff's treating physicians to treatment alone because none had commenced treatment of plaintiff "within a reasonable amount of time following the incident to be able to draw conclusions regarding any alleged causation." In particular, Sternberg did not commence treatment of plaintiff until November 5, 2015, over 13 months after the incident at issue in this trial.

The Court's initial omnibus Order on the first tranche of motions *in limine* resolved over a dozen issues. As is frequently the case with an omnibus Order on motions *in limine*, the Order did not contain detailed discussion of legal authority. The Court ruled that

> Plaintiff failed to designate any expert witnesses and instead seeks to rely on treating doctors to testify regarding plaintiff's injuries. However, [plaintiff's] treating physicians are not experts, and plaintiff must limit his inquiry of the treating doctors to their treatment and observations alone. They may not testify as *post hoc* experts given plaintiff's failures under Federal Rule of Civil Procedure 26.

The issue continued to be raised throughout the weekend before the start of trial, and on the eve of trial, the Court issued a second written Order, offering a somewhat more detailed analysis as to why plaintiff's particular treating physicians could not testify as to general causation: "plaintiff has suffered several significant injuries unrelated to the events of September 1, 2014, and only an expert, employing analysis that would pass muster under Daubert, for example a differential diagnosis, would be qualified to offer an opinion as to causation and distinguish between the effects of those unrelated injuries versus the effects of the September 1, 2014 incident."

The Court further explained that "[i]f plaintiff had no history whatsoever of medical injuries, then certainly, the causation issue would be much simpler, an expert may not be necessary, and the treating physician may suffice," but that "[t]his is not one of those simple cases." Indeed, "[p]laintiff had several injuries, one of which he sustained two days before

September 1, 2014." Although not stated explicitly, the Court also believed that permitting plaintiff's treating physicians to offer causation testimony, without the benefit of genuine expert witness discovery practice, risked misleading the jury and unfairly prejudicing defendants.

## DISCUSSION

The Federal Rules of Civil Procedure provide for two types of expert disclosure. Rule 26(a)(2)(B) provides that when a witness is "retained or specially employed to provide expert testimony," the disclosure must be accompanied by a written report containing

> (i) a complete statement of all opinions that the witness will express and the basis and reason for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). In contrast, under Rule 26(a)(2)(C), an expert that has not been "retained or specially employed" need only submit a disclosure that states "(i) the subject matter on which the witness is expected to present and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)

However, the distinction between retention is not the only characteristic that informs the inquiry as to whether proper disclosures under Rule 26 were made or answers the question regarding the proper scope of permissible testimony. Because courts are vested with an integral gatekeeping function under Federal Rule of Evidence 702 and <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993), courts in this Circuit have drawn further distinctions regarding the range of acceptable testimony that a treating physician may offer as compared to the range that an expert may offer.

One court, for example, has concluded "that treating physician testimony can be of three different types: (1) testimony limited to facts acquired and opinions formed during consultation;

4

(2) testimony that also includes reliance on outside sources, such as another doctor's records or opinions or facts acquired as part of litigation; and (3) testimony where circumstances suggest the doctor was 'retained or specially employed to provide expert testimony.'" Ali v. Connick, No. 11CV5297, 2016 WL 3002403, at *9 (E.D.N.Y. May 23, 2016) (quoting Fed. R. Civ. P. 26(a)(2)(B)). The first category requires no Rule 26 disclosure and is considered factual testimony. The second falls under the purview of Rule 26(a)(2)(C), the provision under which plaintiff designated his treating physicians. The third is governed by Rule 26(a)(2)(B), which governs the Daubert-level expert.

Notwithstanding these three general categories, as several courts have recognized and as this Court concurs, where a "physician's testimony relies upon 'scientific, technical, or other specialized knowledge,' or facts and evidence outside the scope of treatment, the testimony is governed by Federal Rule of Evidence 702, requiring expert disclosure under Federal Rule of Civil Procedure 26[(a)(2)(B)]." In re World Trade Ctr. Lower Manhattan Disaster Site Litig., No. 21-mc-102, 2014 WL 5757713, at *4 (S.D.N.Y. Nov. 5, 2014).

In addition to evaluating the scientific basis for the testimony, courts also consider the substance of the expected testimony to determine whether disclosures were made under the appropriate subsection of Rule 26: If "the medical records provide the primary basis for a treating physician's opinion at trial, an abbreviated disclosure pursuant to FRCP 26(a)(2)(C) is likely adequate because it is supplemented by such records;" "[h]owever, where the doctor seeks to render an opinion based upon facts, experiences, or observations not apparent from, or adequately disclosed in, the medical records, the abbreviated disclosure may fail to fully develop the expert's opinion and the scientific basis upon which the opinion rests." Id. at *5.

Where there is such a failure to develop the opinion, the opposing side "may be unable to test sufficiently the expert's opinion during depositions and suffer unfairly from this handicap at trial." Id. Thus, courts have required expert reports pursuant to Rule 26(a)(2)(B) "where the treating physician intends to offer opinions based upon information the opposing side cannot easily glean from medical records." Id.; see also Robinson v. Suffolk Cty. Police Dep't, 2011 WL 4916709, at *1 (E.D.N.Y. Oct. 17, 2011) (requiring a Rule 26(a)(2)(B) expert report where the treating physician sought to testify as to causation).

In the first instance, this Court determined that plaintiff's proffered testimony regarding causation was an attempt to offer scientific, technical, or other specialized knowledge, or facts and evidence outside the scope of treatment, such that the testimony was governed by Federal Rule of Evidence 702 and requiring an expert disclosure under Federal Rule of Civil Procedure 26(a)(2)(B), not 26(a)(2)(C) as plaintiff had provided. Moreover, as a practical matter, the Court had serious concerns about the reliability of the opinions that would be based thereon, given the 13-month gap between the September 1, 2014 incident and Sternberg's first appointment with plaintiff, an individual whose medical history reflects several injuries to the same body parts as allegedly injured on September 1.

Therefore, consistent with the law and as reflected in the Court's first Order, plaintiff was permitted to offer treating physician testimony regarding treatment and observations. Further, because the Court believed that the kind of specialized testimony that plaintiff sought to offer was governed by Rule 26(a)(2)(B), the Court prohibited plaintiff from offering his treating physicians "as *post hoc* experts given [his] failures under Federal Rule of Civil Procedure 26."

As the second Order made clear, the Court also had Rule 702 and Daubert concerns regarding the reliability of the proffered testimony, based on the "report" that plaintiff offered.

See Nimely v. City of New York, 414 F.3d 381, 396 (2d Cir. 2005) ("Rule 702 governs the district court's responsibility to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." (internal quotations omitted)). The Court determined that Sternberg's anticipated testimony would be unreliable because "reliability within the meaning of Rule 702 requires a sufficiently rigorous analytical connection between [the] methodology and the expert's conclusions," Nimely, 414 F.3d at 396, and here, there was no such connection. In fact, Sternberg's three-page report consisted almost entirely of test results with a single opinion tacked on – that plaintiff's condition would persist indefinitely and that his "diagnosis will progressively exacerbate" as plaintiff ages. Nowhere in the "report" was there a discussion of any of plaintiff's other many injuries or any basis or explanation for this bald assertion; rather, the report stated only that which plaintiff wanted stated, that his condition was based on the September 1, 2014 incident. This is patently unreliable and risked misleading the jury.

Considering the proffered testimony, coupled with the lack of reasoning and methodology behind the testimony and the clear gaps in analysis, this Court was left with the firm conclusion that "there is simply too great an analytical gap between the data and the opinion proffered." General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). Had this issue been raised to me sooner, I would have been able to require plaintiff to make an appropriate disclosure under Rule 26(a)(2)(B). See, e.g., In re World Trade Ctr., 2014 WL 5757713, at *5 (requiring plaintiffs to submit reports pursuant to FRCP 26(a)(2)(B) if they wished to elicit testimony from any of the treating physicians "based upon facts, evidence, or expertise outside the scope of the individual Plaintiffs' course of treatment"). However, as these issues were raised to me well after discovery had ended, as we approached trial, the only option available was to limit the testimony that plaintiff could provide.

7

It was for these reasons that the Court limited the proffered testimony of plaintiff's treating physicians to treatment, observations, and diagnosis.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       June 16, 2017