Index No. 16 CV 5703 (BMC)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LERIN PIERCE,

$$\hspace{6cm}\text{Plaintiff,}$$

-against-

P.O. ZEESHAN TAQI, P.O. SONIA BELARDO, and P.O. IVAN MERCADO,

$$\hspace{6cm}\text{Defendants.}$$

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND MOTION FOR A NEW TRIAL PUSRUANT TO RULE 59 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants Belardo and Mercado*
*100 Church Street*
*New York, New York  10007*

*Of Counsel:  Valerie E. Smith*
*Carolyn K. Depoian*

# Table of Contents

PRELIMINARY STATEMENT ............................................................................................ 1

EVIDENCE PRESENTED .................................................................................................. 2

    PLAINTIFF--LERIN PIERCE .................................................................................. 2

    NON-PARTY WITNESS--AHSIN RAFIQUE ...................................................... 4

    SERGEANT IVAN MERCADO ................................................................................ 4

    POLICE OFFICER SONIA BELARDO .................................................................. 5

POINT I ............................................................................................................................... 6

    STANDARDS OF LAW ............................................................................................ 6

        A.   Rule 50 of the Federal Rules of Civil
        Procedure. ....................................................................................... 6

        B.   Rule 59 of the Federal Rules of Civil
        Procedure. ....................................................................................... 8

POINT II .............................................................................................................................. 9

    THERE IS NO EVIDENCE TO SUPPORT A FAILURE TO INTERVENE
    CLAIM AGAINST SERGEANT IVAN MERCADO ........................................... 9

        A.   There is no evidence to that Defendant
        Mercado knew that excessive force would be used. ................................. 10

        B.   There is no evidence that Defendant Mercado
        observed force being used or that he had a real
        opportunity to prevent the harm. ............................................................... 11

POINT III ............................................................................................................................ 14

    THERE IS NO EVIDENCE TO SUPPORT AN EXCESSIVE FORCE CLAIM
    AGAINST DEFENDANT SONIA BELARDO ..................................................... 14

**POINT IV** ........................................................................................................................ 16

    OFFICER SONIA BELARDO AND SERGEANT IVAN MERCADO SHOULD
    BE GRANTED QUALIFIED IMMUNITY AS A MATTER OF LAW ............. 16

        A.   Officer Sonia Belardo is entitled to Qualified
        Immunity. ....................................................................................... 18

B.    Sergeant Ivan Mercado is entitled to Qualified
Immunity ................................................................................................ 19

POINT V ........................................................................................................................ 20

IN THE ALTERNATIVE, A NEW TRIAL IS WARRANTED PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE RULE 59 ...................................... 20

A.    The verdict against Sonia Belardo on the claim
of excessive force was against the clear weight of
the evidence. ......................................................................................... 20

B.    The verdict against Sergeant Ivan Mercado for
failure to intervene was against the clear weight of
the evidence. ......................................................................................... 22

CONCLUSION ............................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Anderson v. Branen,
　17 F.3d 552 (2d Cir. 1994)...................................................................................9

Armstrong ex rel. Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.,
　425 F.3d 126 (2d Cir. 2005)................................................................................8

Ashcroft v. al-Kidd,
　563 U.S. 731 (2011).............................................................................................2

Bradford v. Currid,
　No. CIV-15-606-R, 2016 U.S. Dist. LEXIS 121547 (W.D. Okla. June 10,
　2016) .................................................................................................................19

Brosseau v. Haugen,
　543 U.S. 194 (2004)...........................................................................................17

Brower v. County of Inyo,
　489 U.S. 593 (1989).....................................................................................18, 23

Cantave v. N.Y.C. Police Officers.
　No. 09-CV-2226, 2011 U.S. Dist. LEXIS 34231, 2011 WL 1239895
　(E.D.N.Y. Mar. 28, 2011) ...................................................................................9

Cash v. Cnty. of Erie,
　654 F.3d 324 (2d Cir. 2011)................................................................................7

Cerbelli v. City of New York,
　99 CV 6846, 2008 U.S. Dist. LEXIS 109341 (E.D.N.Y. Sept. 8, 2008) ...................9

City & Cnty. of San Francisco v. Sheehan,
　135 S. Ct. 1765 (2015)......................................................................................16

Crockett v. City of New York,
　11-CV-4378 (PKC), 2015 U.S. Dist. LEXIS 131327 (E.D.N.Y. Sept. 29,
　2015) ............................................................................................................9, 13

Cronin v. St. Lawrence,
　No. 08..................................................................................................................7

DLC Mgmt. Corp. v. Town of Hyde Park,
　163 F.3d 124 (2d Cir. 1998).....................................................................8, 21, 22

Figueroa v. Mazza,
    59 F. Supp. 3d 481, 2014 WL 4853408 (E.D.N.Y. 2014) ......................................................10

Figueroa v. Mazza,
    825 F.3d 89 (2d Cir. 2016)..............................................................................................7, 13

Filarsky v. Delia,
    132 S. Ct. 1657 (2012)...........................................................................................................16

Graham v. City of New York,
    128 F. Supp. 3d 681, 2015 U.S. Dist. LEXIS 121190 (E.D.N.Y. 2015) ..................................8

Gunning v. Cooley,
    281 U.S. 90 (1930)....................................................................................................................1

Harlow v. Fitzgerald,
    457 U.S. 800 (1982)..................................................................................................................2

Jean-Laurent v. Wilkinson,
    540 F.Supp.2d 501 (S.D.N.Y. 2008).........................................................................................9

Johnson v. City of New York,
    No. 05 Civ. 7519, 2008 U.S. Dist. LEXIS 78984, 2008 WL 4450270
    (S.D.N.Y. Sept. 29, 2008)..................................................................................................10, 13

Johnson v. County of Nassau,
    No. 09-CV-4746(JS)(MLO), 2010 U.S. Dist. LEXIS 101752 (E.D.N.Y. Sep.
    27, 2010) .................................................................................................................................10

Mandola v. Cnty. of Nassau,
    222 F. Supp. 3d 203 (E.D.N.Y. 2016) ...................................................................................20

Matusick v. Erie Cnty. Water Auth.,
    757 F.3d 31 (2d Cir. 2014)...............................................................................................17, 18

Mikulec v. Town of Cheektowaga,
    909 F. Supp. 2d 214 (W.D.N.Y. 2012) ..................................................................................14

Morris v. City of New York,
    14-CV-1749 (JG)(LB), 2015 U.S. Dist. LEXIS 54550 (E.D.N.Y. Apr. 27,
    2015) ........................................................................................................................................9

Mullenix v. Luna,
    136 S. Ct. 305 (2015) (per curiam) ........................................................................................17

Myrick v. Borough,
    No. 11-2791, 2012 U.S. Dist. LEXIS 147003 (E.D. Pa. Oct. 12, 2012) .................................19

O'Neill v. Krzeminski.
    839 F.2d 9 (2d Cir. 1988)...............................................................................................10, 13

Pearson v. Callahan,
    555 U.S. 223 (2009)........................................................................................................17, 18

People v. Perez,
    3 Cal. App. 5th 812, 835 .......................................................................................................21

Plumhoff v. Rickard,
    134 S. Ct. 2012 (2014)...........................................................................................................16

Raedle v. Credit Agricole Indosuez,
    670 F.3d 411 (2d Cir. 2012)....................................................................................................8

Rodriguez v. City of New York,
    No. 10-CV-9570, 2012 U.S. Dist. LEXIS 66548 (S.D.N.Y. May 11, 2012) .........................12

Saucier v. Katz,
    533 U.S. 194 (2001)................................................................................................................16

Taylor v. Barkes,
    135 S. Ct. 2042 (2015)...........................................................................................................16

United States v. Kozeny,
    667 F.3d 122 (2d Cir. 2011)....................................................................................................8

United States v. Landau,
    155 F. 3d 93 (2d. Cir. 1998)....................................................................................................9

Walczyk v. Rio,
    496 F.3d 139 (2d Cir. 2007)..............................................................................................17, 18

White v. Pauly,
    137 S. Ct. 548 (2017) (per curiam) ...................................................................................16, 17

Wiercinski v. Mangia 57, Inc.,
    787 F.3d 106 (2d Cir. 2015)....................................................................................................7

Zalaski v. City of Hartford,
    723 F.3d 382 (2d Cir. 2013)...................................................................................................16

**Other Authorities**

First Amendment ...........................................................................................................................8

Fourth Amendment ......................................................................................................................19

Fed. R. Civ. P. 50.....................................................................................................1,7, 6, 7, 8, 23

FED. R. CIV. P. 59 .................................................................................................................1, 8, 23

http://www.guinnessworldrecords.com/news/2016/8/olympic-legends-usain-bolt-
          fastest-man-on-the-planet-438787 ...................................................................................21

https://www.youtube.com/watch?v=fz14DBP7Er8 ..............................................................21

12 Moore's Federal Practice, § 59.13[1] (3d ed. 2005) .....................................................8

## PRELIMINARY STATEMENT

Trial commenced on June 12, 2017 and, after hearing all of the evidence, the jury returned a verdict finding that defendant Sonia Belardo used excessive force, and that defendant Ivan Mercado failed to intervene in the use of excessive force by Sonia Belardo.  The jury also returned a verdict in favor of defendant Zeeshan Taqi, dismissing the claims against him in the entirety.  Defendants moved for judgment as a matter of law and for a directed verdict at the close of plaintiff's case in chief and after the jury verdict.  The Court then set the post-trial briefing schedule.  Defendants Belardo and Mercado now move pursuant to FED. R. CIV. P. 50(b) for judgment as a matter of law on the grounds that (1) plaintiff failed to provide any evidence that Defendant Sergeant Ivan Mercado had a reasonable opportunity to intervene and so the claim for failure to intervene against him should be dismissed and (2) at a minimum Officer Belardo's actions were reasonable and she should be granted the defense of qualified immunity.  Defendants also move to set aside the verdict pursuant to FED. R. CIV. P. 59 because plaintiff failed to carry his burden and provide enough credible evidence to have the jury decide the case.[1]

"[I]n every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."  Gunning v. Cooley, 281 U.S. 90, 94 (1930) (citations omitted). Plaintiff failed to provide any credible evidence for a jury to properly find that he proved his case in as much as there was no evidence presented that Defendant Sergeant Ivan Mercado had a

---

[1] On June 20, 2017, plaintiff filed his first motion for attorney's fees.  On July 14, 2017, defendants moved for a stay of briefing related to plaintiff's attorney's fees motion, which they intend to oppose, until after a decision is rendered on this instant motion.

reasonable opportunity to intervene in the harm cause to plaintiff. The <u>only</u> evidence plaintiff proffered was that Sergeant Mercado was in the car at the time it hit plaintiff.

Moreover, Defendant Sonia Belardo is entitled to the defense of qualified immunity.  Qualified immunity is critical "to protect [law enforcement] officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority," (<u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 807 (1982)), and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 743 (2011) (citation omitted).  Based on the credible evidence, Defendant Belardo's actions were reasonable and she is entitled to the defense of qualified immunity.

## <u>EVIDENCE PRESENTED</u>

**Plaintiff--Lerin Pierce**

Lerin Pierce testified that on September 1, 2014, he was accused of stealing from a Radio Shack by Mr. Sharoon Samuel, a Radio Shack employee. (<u>See</u> Relevant Portions of the Trial Transcript, annexed to the Declaration of Valerie E. Smith as Exhibit A, 182:23:25; 183:23-25; 184:1.) Plaintiff also testified that he was stopped by Sergeant Mercado while he was walking down Flatbush Avenue in the middle of the day. <u>Id.</u>, at 78: 4-8; 184:6-12; 195:16-17. Flatbush Avenue is a major thoroughfare in Brooklyn. <u>Id.</u>, at 195:13-15.  Plaintiff was stopped in the middle of the sidewalk and there were people walking past him and the officer. <u>Id.</u>, at 79:12-19. At some point Officer Taqi arrived and plaintiff, the Radio Shack manager, Officer Belardo, Sergeant Mercado, and Officer Taqi discussed the allegations made by the Radio Shack manager. <u>Id.</u>, at 81:17-25; 82:1-16. During this conversation, plaintiff was informed by the police that he would be placed in handcuffs. <u>Id.</u>, at 83:7-10.  Shortly thereafter, plaintiff decided to run away from the officers on Flatbush Avenue towards the downtown area. <u>Id.</u>, at 194:3-4; 84:18-

19; 24-25.  Plaintiff was running down the right hand side of the road and there was traffic going in the same direction. Id., at 85:6-8; 87:15-19. When plaintiff first started running, he was running on the sidewalk. Id., at 194:5-6.  The first cross street plaintiff ran past was Livingston Street, and he then ran past Lafayette Street. Id., at 85:1-3; 6-8.  Plaintiff admitted that he was running "more fast than I would normally." See Exhibit A, 85: 9-12.  While running, midway down the street, plaintiff heard police sirens coming from his side. See Exhibit A, at 85:13-19; 194:6-16. After hearing the sirens from a cop car and running past Lafayette Avenue, plaintiff ran straight across Flatbush Avenue. Id., at 88: 14-17; 85:23-25. When plaintiff ran onto Flatbush Avenue, there were two cars – a tan car and a patrol car -- chasing him. Id., at 86:17-19.  The tan car was in front of the patrol car and pulled up some and then moved back. Id., at 89:7-15.  Plaintiff ran about half way down the block past Lafayette Street before State Street before he ran across Flatbush Avenue, without the aid of a crosswalk. 85:25; 26:1-3.

As plaintiff ran across the street, he made it to the first lane of oncoming traffic before Officer Belardo's car struck him. Id., at 88: 14-20. Plaintiff could not tell who was driving the police car and, most importantly, plaintiff testified that he and could not tell how fast the car was going when it hit him. Id., at 198: 6-9; 197:13-19. Plaintiff testified that as he was running across the street he saw the police car speed up to hit him, but that at some point Officer Belardo applied the brakes. Id., at 198:21-25; 199:1-8.

After the incident, plaintiff went to Brooklyn Hospital. Id., at 200:3-5. At Brooklyn Hospital plaintiff described the incident stating that he was "clipped by a car"  and complained of right knee pain. See Exhibit A, at 202:8-10; 205: 14-20.  Plaintiff testified that the photographs taken of him immediately following the incident depicted only abrasions from being

hit by the police car. See Exhibit A, 215-220; see also trial exhibits F-1, F-2, and F-2, annexed to the Declaration of Valerie E. Smith as Exhibit B.

**Non-Party Witness--Ahsin Rafique**

Mr. Rafique testified that he was sitting in the back seat of a police car when he observed plaintiff run from the police. See Exhibit A, at 354:15-17; 361:23-24. Two police officers got into the car, turned on the police lights and sirens and drove after the plaintiff. Id., at 354:18-21; 364:2-4. From the backseat, Mr. Rafique had a limited view of his surroundings. Id., at 357:22-24. Mr. Rafique testified that the car was going approximately 40-45 miles an hour from the time the officers got into the car until the car stopped. Id., at 355:3-8. Mr. Rafique observed plaintiff initially running on the sidewalk towards Atlantic Terminal. Id., at 363:11-15. Mr. Rafique then observed plaintiff run in front of the car in the middle of the block. Id., at 364:12-14; 356:9-14. Specifically, plaintiff ran into the front right side of the car. Id., at 358:5-6. Mr. Rafique testified that when the plaintiff ran in front of the car, the female officer who was driving the car applied the brakes. Id., at 364:22-24. Mr. Rafique further testified that when he observed plaintiff run into Flatbush Avenue, the female officer did not speed up, but to the contrary, Mr. Rafiwue testified that the female officer tried to stop the car before the plaintiff ran into it. Id., at 364:25; 365:1-2; 365:12-13. As the female officer was trying to stop the car, she said "oh shit" See Exh. A, at 357:4-12; 365:18-23. Furthermore, Mr. Rafique did not hear the other officer in the car say anything to Officer Belardo while she was driving. Id., at 357:18-21; 365:24-25; 366:1.

**Sergeant Ivan Mercado**

Sergeant Mercado testified that when he was speaking with the plaintiff on Flatbush Avenue, he was with Officer Belardo, Officer Taqi and two Radio Shack employees.

Id., at 271: 14-20.  One of the Radio Shack employees was in the back of his car. Id., at 249:13-20 258:4-12. During the conversation, plaintiff took off his backpack, dropped it and ran away from the officers southbound on Flatbush Avenue on the sidewalk. Id., at 272:13-22.  Flatbush Avenue is a main thoroughfare in Downtown Brooklyn with a lot of car traffic and a lot of pedestrians walking on the sidewalk. Id., at 273:2-8. When plaintiff started running down Flatbush Avenue, Officer Belardo and Sergeant Mercado got back in the vehicle, turned on the police lights and sirens, and proceeded to follow the plaintiff on the street while he ran on the sidewalk. Id., at 274: 9-13. As Officer Belardo and Sergeant Mercado were following plaintiff, plaintiff was on the right hand side of the vehicle/passenger side of the vehicle which was the same side of the car as Sergeant Mercado. See Ex. A, at 277:1-5. Officer Belardo was driving and Sergeant Mercado was in the passenger seat. Id., at 274:17-18; 277:1-5. Officer Belardo was driving about 20-25 mph because they were on Flatbush Avenue at noon. Id., at 284:10-17. Plaintiff then ran across the street in the middle of the street and collided with the police vehicle. When Sergeant Mercado saw plaintiff crossing Flatbush Avenue, he thought that plaintiff was crossing Flatbush Avenue to get to Atlantic Terminal. Id., at 275:7-11. Plaintiff turned around and ran towards the car that Officer Belardo was driving. Id., at 278:20-25.  Officer Belardo immediately put the brakes on when plaintiff came towards their car. Id., at 278:20-25.  Sergeant Mercado testified plaintiff collided with the right front passenger side of the car. Id., at 279:9-11. At the time plaintiff ran into the police car, the car was going very slow because Officer Belardo was coming to a stop. Id., at 284:18-21.

**Police Officer Sonia Belardo**

Sonia Belardo testified that on September 1, 2014 she was driving a blue and white police vehicle. Id., at 417: 23-25. She and Sergeant Mercado got out of the police car to

speak to the plaintiff. As some point thereafter, plaintiff started running down Flatbush Avenue. Id., at 420:16-20.  Flatbush Avenue is a very busy street with a lot of traffic. Id., at 420: 24-25; 421: 1-8.  After plaintiff started running down Flatbush Avenue she and Sergeant Mercado got into the police vehicle to pursue him. Id., at 403:1-3; 421:13-17.  Officer Belardo was driving and turned on the police lights and sirens to indicate to the plaintiff to stop running. Id., at 421:16-25. Officer Belardo was driving behind Officer Taqi and the plaintiff so that she would be able to observe Officer Taqi and verify that he was fine. Id., at 422:15-20.  She was also unable to drive faster than the plaintiff and Officer Taqi were running because of traffic on Flatbush Avenue. Id., at 422:15-20.  Officer Belardo observed Plaintiff ran into Flatbush Avenue in the middle of the street. Id., at 423: 15-21.  Officer Belardo saw another vehicle stop in front of plaintiff.  Id., at 423:23-25. When this vehicle stopped in front of plaintiff, he made a zigzag motion to avoid the officers that exited that vehicle and ran toward her car. Id., at 424: 5-7; 425:5-10. When Officer Belardo saw plaintiff switch directions and run towards her car, she slammed on the brakes. Id., at 425:18-21; 426:1-4. Officer Belardo was able to stop the car before the plaintiff ran into it. Id., at 407:1-3. Specifically, she stated that at the time plaintiff hit the police car, the car was stopped. Id., at 406:5-7.  Officer Belardo testified that the only way plaintiff hit her car was because he did not see her. Id., at 406:21:25.  The only statement Sergeant Mercado made to Officer Belardo was to get in the car. Id., at 408: 22-24.

## POINT I

## STANDARDS OF LAW

### A.  Rule 50 of the Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 50 provides that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may ... grant a motion for

judgment as a matter of law… ."  Fed. R. Civ. P. 50(a)(1)(B); Cash v. Cnty. of Erie, 654 F.3d 324, 333 (2d Cir. 2011) (holding that Rule 50 "generally imposes a heavy burden on the movant, who will be awarded judgment as a matter of law only when 'a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.' ") (quoting Fed. R. Civ. P. 50(a)).

In making this determination, the court should review the trial record as a whole. "Because [Rule 50] motions are made at trial, they are decided not on what evidence could have been admitted, but on the evidence that has been admitted." Figueroa v. Mazza, 825 F.3d 89, 98 n.8 (2d Cir. 2016) (internal quotation marks omitted) ("What we care about at the Rule 50 stage is not whether the nonmovant has managed to collect evidence sufficient to support his cause, but whether he has actually put that evidence before the jury charged with deciding the dispute.") A verdict may be set aside only if there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." Wiercinski v. Mangia 57, Inc., 787 F.3d 106, 112 (2d Cir. 2015) (internal quotation marks omitted); see also Cash, 654 F.3d at 333.

In short, a court may grant a Rule 50 motion when, after "viewing the evidence in the light most favorable to the non-movant, [it] concludes that 'a reasonable juror would have been compelled to accept the view of the moving party.'" Cash, 654 F.3d at 333 (quoting Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007)).  When a jury's finding of liability is not supported by evidence introduced at trial, a Court should not hesitate to grant a Rule 50 motion. See e.g., Cronin v. St. Lawrence, No. 08 CV 6346 (VB), 2012 U.S. Dist. LEXIS 15743, at *12 (S.D.N.Y. Jan. 13, 2012) (reserving on defendant's Rule 50 application during trial, granting

defendant's judgment as a matter of law after trial, finding that there was no evidence to support the jury's conclusion that the individual defendant violated plaintiff's First Amendment rights under § 1983.

**B.  Rule 59 of the Federal Rules of Civil Procedure.**

Under Federal Rule of Civil Procedure 59 a court "may grant a new trial 'for any reason for which a new trial has heretofore been granted in an action at law in federal court. Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 417 (2d Cir. 2012) quoting Fed. R. Civ. P. 59(a)(1)(A).' " " ' 'A motion for a new trial should be granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.' " DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 133 (2d Cir. 1998) (quoting Song v. Ives Labor, Inc., 957 F.2d 1041, 1047 (2d Cir. 1992)). The general grounds for a new trial are that:  (1) the verdict is against the clear weight of the evidence; (2) the trial court was not fair; (3) substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions to the jury; or (4) damages are excessive. 12 Moore's Federal Practice, § 59.13[1] at 59-43 (3d ed. 2005). Other grounds include non-harmless errors in jury instructions, United States v. Kozeny, 667 F.3d 122, 130 (2d Cir. 2011), or verdict sheets, Armstrong ex rel. Armstrong v. Brookdale Univ. Hosp. & Med. Ctr., 425 F.3d 126, 136 (2d Cir. 2005). Graham v. City of New York, 128 F. Supp. 3d 681, 2015 U.S. Dist. LEXIS 121190 (E.D.N.Y. 2015)

In comparison to a Rule 50 motion for judgment as a matter of law, the Second Circuit has held that the standard for a Rule 59 motion in some respects is less onerous for the moving party in two ways: first, "[u]nlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict." DLC Mgmt. Corp, 163 F.3d at 134. Second, in deciding a Rule 59 motion "a trial judge is free to weigh the

evidence himself, and need not view it in the light most favorable to the verdict winner." United States v. Landau, 155 F. 3d 93, 104 (2d. Cir. 1998).

## POINT II

### THERE IS NO EVIDENCE TO SUPPORT A FAILURE TO INTERVENE CLAIM AGAINST SERGEANT IVAN MERCADO

In order for a law enforcement officer to be held liable for another officer's use of excessive force, "there must have been a realistic opportunity [for the former] to intervene to prevent the harm from occurring." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). "A police officer cannot be held liable for failure to intervene unless such a failure permitted fellow officers to 'violate a suspect's clearly established statutory or constitutional rights' and was under circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights." Morris v. City of New York, 14-CV-1749 (JG)(LB), 2015 U.S. Dist. LEXIS 54550, at *14 (E.D.N.Y. Apr. 27, 2015) (citing Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997)). However, liability may attach only when, "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." Jean-Laurent v. Wilkinson, 540 F.Supp.2d 501, 512 (S.D.N.Y. 2008) (citing O'Neill v. Krzeminski. 839 F.2d 9, 11-12 (2d Cir. 1988)); Cantave v. N.Y.C. Police Officers. No. 09-CV-2226, 2011 U.S. Dist. LEXIS 34231, 2011 WL 1239895, at *8 (E.D.N.Y. Mar. 28, 2011).

In Crockett v. City of New York, 11-CV-4378 (PKC), 2015 U.S. Dist. LEXIS 131327, at *22-23 (E.D.N.Y. Sept. 29, 2015) the Court dismissed the failure to intervene claims against the non-shooting defendants because they did not have a realistic opportunity to prevent the shooting given the fast paced nature of the encounter. Similarly, in Cerbelli v. City of New

York, 99 CV 6846, 2008 U.S. Dist. LEXIS 109341, at *40 (E.D.N.Y. Sept. 8, 2008), adopted by 2008 U.S. Dist. LEXIS 77335 (E.D.N.Y. Sept. 30, 2008) the Court dismissed the failure to intervene claims because these defendants could not have interjected themselves into the situation during "the exceedingly compressed time frame" when police officers shot plaintiff.

Courts have consistently found that no reasonably jury could conclude that an officer had sufficient time to prevent an alleged use of force when the alleged use of force lasted only for "a couple of seconds."  See Johnson v. City of New York, No. 05 Civ. 7519, 2008 U.S. Dist. LEXIS 78984, 2008 WL 4450270, at *6 (S.D.N.Y. Sept. 29, 2008); O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988) (finding no realistic opportunity to intercede in use of excessive force by officer where punches occurred in rapid succession); Figueroa v. Mazza, 59 F. Supp. 3d 481, 2014 WL 4853408, at *8 (E.D.N.Y. 2014) (finding that the blows occurred in such rapid succession that defendants did not have a realistic opportunity to intervene).  In Johnson v. County of Nassau, No. 09-CV-4746(JS)(MLO), 2010 U.S. Dist. LEXIS 101752, at *11 (E.D.N.Y. Sep. 27, 2010), the court dismissed the failure to intervene claim because the of the immediacy of the officer's actions which provided the other defendants no reasonable opportunity to intervene.

### A.  There is no evidence to that Defendant Mercado knew that excessive force would be used.

Plaintiff failed to present *any* evidence demonstrating that Sergeant Mercado had reason to know that Officer Belardo would use excessive force.[2]  The only testimony presented was that Sergeant Mercado told Officer Belardo to get into the car after the plaintiff start running away from the police on Flatbush Avenue.  The non-party witness, Mr. Rafique, who was in the

---

[2] Indeed, for the purposes of this point, defendants assume excessive force.  However, defendants maintain that the evidence does not support a finding of excessive force. See Point III and Point V.

backseat of the car at the time of the pursuit did not hear Sergeant Mercado give Officer Belardo any instructions or make any comments to Officer Belardo during the pursuit.  In fact, the only comment made while in the vehicle, was Officer Belardo stating "oh shit" after the plaintiff ran into the car. See Ex. A, at 357:4-12; 365:18-23.  Officer Belardo made no oral statement or physical actions demonstrating any intent to use the vehicle to stop the plaintiff from fleeing.  In fact, the testimony indicates that Officer Belardo's actions were directly contrary to any show of intent to use the police vehicle as a means to physically stop plaintiff.  Mr. Rafique, Officer Belardo, and Sergeant Mercado all testified that when Officer Belardo got into the vehicle, she turned on the police lights and sirens.  See Ex. A, at 354:18-21; 364:2-4; 274: 9-13; 421:16-122.  Officer Belardo explained to the jury that she turned on the police lights and sirens to indicate to the plaintiff to stop running. Id., at 421:16-122.  In fact, Sergeant Mercado testified that when he observed plaintiff running across Flatbush Avenue, he thought that plaintiff was running towards Atlantic Terminal. Id., at 276:7-11.  There is nothing whatsoever in the record to indicate that at any time Sergeant Mercado thought that Officer Belardo would use the vehicle to hit plaintiff.  In fact, there is *nothing* in the record to indicate that Sergeant Mercado or anyone involved had reason to know that Officer Belardo would use the vehicle as a mean of force against plaintiff.

There was no evidence presented that a reasonable jury could rely on to indicate that Sergeant Mercado had reason to believe that force would be used against plaintiff and this being the case it would follow that he would not have any realistic opportunity to intervene to preemptively stop the vehicle from colliding with plaintiff.

**B. There is no evidence that Defendant Mercado observed force being used or that he had a real opportunity to prevent the harm.**

"[T]he mere fact that [an officer] was present for the entire incident does not, on its own, establish that he had either awareness of excessive force being used or an opportunity to

prevent it."  Rodriguez v. City of New York, No. 10-CV-9570, 2012 U.S. Dist. LEXIS 66548, at

*14 (S.D.N.Y. May 11, 2012).  There also must have been enough time for a bystander officer to

intervene.  Corley, 89 F. Supp. 3d at 523 (citations omitted).  There is no evidence in the trial

record that Defendant Mercado observed any force being used by another police officer or that

he had any real opportunity to prevent harm.

   Plaintiff failed to present *any* evidence demonstrating that Sergeant Mercado had

the realistic opportunity to intervene, and plaintiff failed to provide *any* evidence demonstrating

how Sergeant Mercado had the reasonable ability to intervene.  There is nothing in the testimony

presented to the jury which indicates how long plaintiff was running across Flatbush Avenue.  As

plaintiff testified himself, he was running faster than he normally would. See Exhibit A, at 85: 9-

12.  The record is silent as to how long it took plaintiff to run across three lanes of traffic before

he was struck by the police car.  The record is also silent as to how long plaintiff was in the

roadway before being hit.  In fact, plaintiff testified that he was running on the sidewalk at first,

thus there was no risk that plaintiff would collide with Officer Belardo's car until, at the earliest,

plaintiff ran out onto Flatbush Avenue.  Furthermore, all three individuals in the police car

testified that when the plaintiff ran in front of Officer Belardo's car, she slammed on the brakes.

Id., at 364:22-24; 278:20-25; 425:18-21; 426:1-4. There was no testimony that Officer Belardo

swerved or turned her car in an attempt to hit plaintiff.  Because the of the immediacy of Officer

Belardo's actions which were taken in response to plaintiff's actions, Sergeant Mercado had no

opportunity to prevent plaintiff's collision with the police vehicle.  Even if the jury believed

plaintiff's version as true, the excessive force would not have taken place until Officer Belardo

accelerated.  The acceleration would have occurred so quickly, according to plaintiff, that

Sergeant Mercado would not have any opportunity to prevent the car's contact with

plaintiff.  Similar to the findings in <u>Crockett</u>, <u>Johnson</u>, <u>O'Neill</u>, and <u>Figueroa</u>, <u>see</u> <u>supra</u>, any purported acceleration could only have unfolded in an instantaneous manner, thus eliminating Sergeant Mercado's opportunity to intervene.  Of course, until such time as plaintiff ran off of the sidewalk and into the street, crossing in front of Officer Belardo's car, Officer Belardo was merely pursuing a fleeing suspect and there would be no reason for Sergeant Mercado to believe Officer Belardo may use excessive force on plaintiff.  To the contrary, until such time as, according to plaintiff, Officer Belardo accelerated her car, there would be no unconstitutional conduct by Officer Belardo for Sergeant Mercado to intervene in.

The record is also void of any testimony providing Sergeant Mercado with a reasonable opportunity to physically intervene to prevent the harm caused to plaintiff.  Plaintiff failed to provide set forth any evidence demonstrating how Sergeant Mercado would have been able to physically prevent Officer Belardo from hitting plaintiff.  At the time of the alleged use of force, Sergeant Mercado was sitting in the front passenger seat of the car. <u>Id.</u>, at 274:17-18; 277:1-5. He was not in control of the steering wheel, there is no testimony regarding his ability to reach the steering wheel.  Most importantly, from where Sergeant Mercado was sitting there was no possible way for him to physically stop the car using the brakes.  Due to his location, Sergeant Mercado could not have plausibly intervened in the alleged use of force by Officer Belardo.  Plaintiff failed to set forth any evidence regarding timing and ability of Sergeant Mercado to prevent the alleged Constitutional violation by Officer Belardo.    Based on the totality of the evidence presented and the lack of evidence presented, a reasonable jury would not have a legally sufficient evidentiary basis to find that Sergeant Mercado failed to intervene in the alleged excessive use of force by Officer Belardo.

Furthermore, presence inside the car alone is not enough for plaintiff to satisfy plaintiff's burden of proof. The reason "mere presence" is insufficient is because it ignores the requirement that a plaintiff prove a defendant had a reasonable opportunity to intervene. Corley, 89 F. Supp. 3d at 523-24 (citing Piper v. City of Elmira, 12 F. Supp. 3d 577 (W.D.N.Y. 2014) (dismissing defendant officers who responded to the scene of a house party because "there was no … evidence that these officers were in a position from which they could have intervened during the challenged uses of force") and Mikulec v. Town of Cheektowaga, 909 F. Supp. 2d 214, 222 (W.D.N.Y. 2012) (granting summary judgment where the plaintiff established officers' presence at the scene, but could not establish that they "witnessed the alleged abuse or had an opportunity to stop it"). Other than the testimony that Defendant Mercado was inside the car, plaintiff presented no evidence sufficient to support a finding by a reasonable jury that Sergeant Mercado failed to intervene. Accordingly, Defendant Mercado is entitled to judgment as a matter of law and should be dismissed with prejudice from the case.

## POINT III

### THERE IS NO EVIDENCE TO SUPPORT AN EXCESSIVE FORCE CLAIM AGAINST DEFENDANT SONIA BELARDO

The objective evidence and testimony elicited at trial make plain that plaintiff provided no evidence to establish a claim for excess force against Office Sonia Belardo. In order for the jury to make a finding to excessive force, the jury would have had to find that defendant Belardo used excessive force with respect to the vehicular impact; the jury had to find that the defendant Belardo acted intentionally or recklessly. If the jury found that the vehicular impact was accidental or inadvertent, then there was no excessive force. See Ex. A, at 539:8-13. For the same reasons discussed *infra* in Point V there was no evidence presented at trial that a reasonable

jury could find that Officer Belardo intentionally or recklessly caused the collision of the police vehicle with plaintiff's body.

Plaintiff contradicted himself when he testified that he was unable to determine the speed of the car and unable to identify the driver, yet somehow plaintiff was able to testify that the car accelerated when he was running across the street. Id., at 198: 6-9; 197:13-19.  His testimony that he saw the car speed up could not have been found to be credible.  Plaintiff's lack of credibility is further evidenced by the fact that the jury returned a complete verdict on behalf of Defendant Zeeshan Taqi, the jury did not credit any of the plaintiff's testimony.

The evidence presented at trial supports the position that the contact between the police car and plaintiff was accidental. The three witnesses, including a non-party witness, who had the ability to observe the actions of Officer Belardo before the vehicle made contact with plaintiff testified that the vehicle was stopping before making any contact with the plaintiff. Id., at 364:22-24; 278:20-25; 425:18-21; 426:1-4.  The non-party witness and Sergeant Mercado agree with the testimony of Officer Belardo that she slammed on the brakes when plaintiff ran in front of her car. Id.  Officer Belardo actively tried to prevent any contact with plaintiff by stopping the vehicle.  There is no evidence that she intentionally used the car to stop plaintiff's flight.  Furthermore, there is nothing in the record to support the conclusion that Officer Belardo acted recklessly with conscious disregard of the known probable consequences. Id., at 539:14-18. Officer Belardo was not asked one question by plaintiff's counsel about the remote possibility of a collision between her vehicle and the plaintiff.  There is nothing in the record that a reasonably jury could rely on to base a determination that Officer Belardo's actions were reckless.  To the contrary, the record supports that Officer Belardo's actions were reasonable and reactive to plaintiff's unforeseen actions.  Based on the testimony presented, the only conclusion that a

reasonably jury could come to was that the contact between plaintiff and the police car was accidental, which does not support a finding of excessive force.

### POINT IV

### OFFICER SONIA BELARDO AND SERGEANT IVAN MERCADO SHOULD BE GRANTED QUALIFIED IMMUNITY AS A MATTER OF LAW

The defense of qualified immunity is independent of the merits of the underlying action and must be examined independently of the underlying claims.  Saucier v. Katz, 533 U.S. 194, 204 (2001).  "[Q]ualified immunity employs a deliberately 'forgiving' standard of review," Zalaski v. City of Hartford, 723 F.3d 382, 389 (2d Cir. 2013), and does so to ensure "that those who serve the government do so with the decisiveness and the judgment required by the public good." Filarsky v. Delia, 132 S. Ct. 1657, 1665 (2012) (internal quotation marks omitted).

Qualified immunity protects police officers from liability under § 1983 so long as they have not "violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." See City & Cnty. of San Francisco v. Sheehan, 135 S. Ct. 1765, 1774 (2015).  "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014).  Therefore, "[w]hen properly applied, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." See Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015) (quoting Ashcroft v. al-Kidd, 563 U.S. 731 (2011)).

The Supreme Court recently "reiterate[d] the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.' " See White v. Pauly, 137 S. Ct. 548 (2017) (per curiam) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011).  Rather,

"[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established." See Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per curiam). Therefore, the Supreme Court has taken care to note that the qualified immunity inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." See Brosseau v. Haugen 543 U.S. 194, 198 (2004); see also Mullenix, 136 S. Ct. at 308. In other words, unless a prior relevant case "squarely governs" an officer's conduct, qualified immunity prevents liability from attaching. See Brosseau, 543 U.S. at 201. The rationale behind this requirement is that if clearly established law were defined at a high level of generality, "plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." See White, 137 S. Ct. at 552. Finally, when evaluating whether the law is clearly established, the Second Circuit restricts the analysis to "the decisional law of the Supreme Court and the applicable circuit court." See Matusick v. Erie Cnty. Water Auth., 757 F.3d 31, 60 (2d Cir. 2014).

An officer may be shielded from liability even if his actions involve errors in judgment. See Pearson v. Callahan, 555 U.S. 223, 231 (2009) ("The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." (internal quotation marks omitted)). Courts are instructed to focus on whether "officers of reasonable competence could disagree" about the illegality of the challenged conduct "because law enforcement work relies on probabilities and reasonable suspicions in an almost infinite variety of circumstances, many requiring prompt action, there can frequently be a range of responses to given situations that competent officers may reasonably think are lawful." Walczyk v. Rio, 496 F.3d 139, 154

n.16 (2d Cir. 2007). "Within this range, an officer enjoys qualified immunity for 'reasonable mistakes.' " Id. (citing Saucier, 533 U.S. at 205, 206).

**A. Officer Sonia Belardo is entitled to Qualified Immunity.**

Officer Belardo's actions of following plaintiff in the vehicle as another officer pursued on foot were objectively reasonable. Officer Belardo had probable cause to arrest the plaintiff prior to his flight. It is objectively reasonable for an officer to pursue someone that they had probable cause to arrest.  Officer Belardo first attempted to stop plaintiff from fleeing by turning on the police lights and sirens to indicate to the plaintiff should stop running. See Ex. A, at 354:18-21; 364:2-4; 274: 9-13; 421:16-122.  When plaintiff continued to run away from the police, Officer Belardo drove on the roadway on Flatbush Avenue in Downtown Brooklyn at 12 p.m. on Labor Day while plaintiff ran on the sidewalk. Id., at 274: 9-13. Officer Belardo did not drive up onto the sidewalk to stop plaintiff from fleeing.  Her actions of driving in the roadway while following the plaintiff were objectively reasonable.

Plaintiff was the intervening factor, his actions were not objectively reasonable. First, plaintiff testified that he heard police sirens while running, yet plaintiff did not stop running from the police. See Ex. A, at 88: 14-17; 85:23-25.  Second, plaintiff testified that he ran onto Flatbush Avenue in the middle of the block and not within a crosswalk. Id., at 85:25; 26:1-3; 423: 15-21.  Third, plaintiff testified that he was running faster than he would normally run, thus limiting the time Officer Belardo had to react to plaintiff running into traffic. See Exhibit A, at 85: 9-12. The Supreme Court explained in Brower v. County of Inyo, 489 U.S. 593, 596-597 (1989), that if an officer intended to stop a fleeing suspect by a show of authority, such as flashing lights, but actually stopped the suspect by accidentally striking them, that would not constitute means intentionally applied. Brower, 489 U.S. at 597. Thus, there would be no

"seizure" within the meaning of the Fourth Amendment. Myrick v. Borough, No. 11-2791, 2012 U.S. Dist. LEXIS 147003, at *17-18 (E.D. Pa. Oct. 12, 2012); Bradford v. Currid, No. CIV-15-606-R, 2016 U.S. Dist. LEXIS 121547, at *10 (W.D. Okla. June 10, 2016) (evidence demonstrated that the crash which ensued was unavoidable and was not intended to be used by the officer as a roadblock to effectuate a seizure against the plaintiff).

Officer Belardo reacted to plaintiff's actions in the most reasonable way, by slamming on her brakes further demonstrating that the contact between her vehicle and plaintiff was unavoidable.  Whether she was able to stop her vehicle in time to avoid a collision with plaintiff is not the standard for an excessive force claim--that would be negligence, which is not a basis for a finding to a Constitutional violation.  Her actions in applying the brakes when plaintiff ran in front of her car were objectively reasonable.  In fact, three individuals, including the non-party witness, testified that Officer Belardo attempted to stop her vehicle from hitting plaintiff.  Plaintiff himself testified that he did not know how fast the car was travelling when it hit him, and this it is implausible that he was able to see the car speed up.  Officer Belardo's own statement at the time was "oh shit."  It is clear from this language that the contact between plaintiff and the vehicle was unintentional and accidental, which, again, does not support a finding of excessive force, but regardless, is not unreasonable.  Thus, the accidental contact of the vehicle with plaintiff does not constitute a Fourth Amendment seizure and does not violate any clearly established law.  Plaintiff assumed the risk of being struck by any vehicle when he ran into traffic.  Officer Belardo is entitled to the defense of qualified immunity.

**B.  Sergeant Ivan Mercado is entitled to Qualified Immunity**

Sergeant Mercado is entitled to qualified immunity on the failure to intervene claim. It is objectively reasonable that Sergeant Mercado would not believe that plaintiff's

Constitutional rights were being violated when Officer Belardo pursued plaintiff. At the time of plaintiff's flight, he was not free to leave and the defendants possessed probable cause for plaintiff's arrest. It is objectively reasonable that Officer Belardo would pursue the plaintiff in order to effectuate his lawful arrest. Given the lawfulness of Officer Belardo's pursuit of plaintiff, Sergeant Mercado was not obligated to intervene. See Mandola v. Cnty. of Nassau, 222 F. Supp. 3d 203 (E.D.N.Y. 2016) (Individual Defendants were not obligated to intervene in the lawful search conducted by their fellow deputy sheriffs. Accordingly, Plaintiffs' failure to intervene claim is dismissed on summary judgment grounds.).

## POINT V

### IN THE ALTERNATIVE, A NEW TRIAL IS WARRANTED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE RULE 59

**A. The verdict against Sonia Belardo on the claim of excessive force was against the clear weight of the evidence.**

The credible, objective evidence and testimony elicited at trial make plain that plaintiff provided no evidence to establish a claim for excess force and failure to intervene. There was no credible evidence that Officer Belardo was reckless and no credible evidence that Officer Belardo accelerated prior to hitting plaintiff.[3] The findings against Officer Belarod and Sergeant Mercado are against the clear weight of the evidence. Ashin Rafique testified that Officer Belardo was driving 40-45 miles per hour the entire time she was pursuing plaintiff. See Ex. A, at 355:3-8. This is not credible testimony.

First this testimony is not credible because both plaintiff and Officer Belardo testified that she did not pass plaintiff while he was running. In fact, there was no testimony from

---

[3] The Court instructed the Jury that "[a]n act is intentional it it's done knowingly. That is, if it is done voluntarily and deliberately and not because of mistake, accident, negligence, or inadvertence. An act is done recklessly if it is done in conscious disregard of its known probable consequence." Ex. A, at 539:16-18.

any witness that the police car, which was travelling in the same direction as plaintiff, ever passed plaintiff.  If Mr. Rafique's statement was credible it would mean that plaintiff was running at a speed greater than 40-45 mph.  This is not plausible.  There is no possible way that plaintiff was running at a speed greater than 40-45 mph.  The fastest man in the world can sprint at a speed of no more than 28 mph.[4]  Third, plaintiff's documented injuries do not corroborate that plaintiff was hit by a vehicle driving 40-45 mph or that he was hit by a vehicle that was accelerating.  Specifically, the photographs presented at trial (see Defendants Exhibit F-1, F-2 and F-3) show mere abrasions to plaintiff's knee and a small scrape to his face. See Ex. B. Additionally, plaintiff's own description of the incident at Brooklyn Hospital, describe him as being clipped by the car.  See Exhibit A, at 202:8-10; 205: 14-20.  Certainly, this does not support the finding that plaintiff was hit by a car that was accelerating or travelling 45 miles pre hour.

It is not credible that plaintiff would be able to testify that he observed the police car accelerate prior to hitting him since he was unable to testify as to the speed of the car and unable to identify the driver.[5] Id., at 198: 6-9; 197:13-19.  All the witnesses who would have had the ability to observe the actions of Officer Belardo before the vehicle made contact with plaintiff testified that the vehicle was stopping before making any contact with the plaintiff. Id., at 364:22-24; 278:20-25; 425:18-21; 426:1-4.  Every individual inside the vehicle, including a non-party, agrees that Officer Belardo slammed on the brakes when plaintiff ran in front of her

---

[4]  According to the Guinness World Records, the fastest recorded running speed is 27.6 mph. See http://www.guinnessworldrecords.com/news/2016/8/olympic-legends-usain-bolt-fastest-man-on-the-planet-438787 See also https://www.youtube.com/watch?v=fz14DBP7Er8.  See People v. Perez, 3 Cal. App. 5th 812, 835 n.5, (2016) (Court took judicial notice of the fact that the world record for the 100-meter sprint is 9.58 seconds, a rate of 23.35 miles per hour).

[5] In fact, the jury did not credit any of the plaintiff's testimony, which is evidenced by the fact that the jury returned a complete verdict on behalf of Defendant Zeeshan Taqi, whom plaintiff alleged assaulted him after he collided with the police vehicle.

car. Id. Given this information, it there would be no reasonable opportunity for Sergeant Mercado to prevent the harm to plaintiff as Officer Belardo was actively trying to prevent any contact with plaintiff by stopping the vehicle. Furthermore, there was no opportunity to prevent the contact because the incident was rapidly unfolding and there was no time for Sergeant Mercado to react to plaintiff running in front of the police car.

The testimony presented at trial indicates that Officer Belardo took no affirmative action to use the vehicle to intercept plaintiff. Specifically, she did not drive up on the sidewalk and she did not drive ahead of plaintiff to create a roadblock. The evidence presented indicates that Officer Belardo used the police lights and sirens to communicate to the plaintiff to stop fleeing and was pacing him and Officer Taqi as they ran. See Ex. A, at 85:13-19; 194:6-16; 86:17-19; 354:18-21; 364:2-4; 274: 9-13; 421:16-122. It was not until plaintiff ran in front of her car that there was even the remote possibility that Officer Belardo's vehicle would have contact with plaintiff.

**B. The verdict against Sergeant Ivan Mercado for failure to intervene was against the clear weight of the evidence.**

The testimony at trial provides no evidence that Sergeant Mercado would have had the opportunity to intervene in the alleged use of excessive force. Sergeant Mercado was not asked one single question by counsel about his ability to intervene and prevent Officer Belardo from driving at the speed alleged by Mr. Rafique. In fact, he was not challenged about the speed at which they were driving by plaintiff's counsel when he testified that Officer Belardo was driving about 25-20 miles per hour and was coming to a stop when plaintiff collided with the car. See Ex. A. at 284:18-21. The only evidence that plaintiff established was that Sergeant Mercado was in the car at the time that it made contact with plaintiff. In fact, based on the testimony presented, Mr. Rafique who was in the backseat had as much an opportunity to stop the alleged

use of force as Sergeant Mercado and was in the exact same position. However, plaintiff's counsel failed to ask Mr. Rafique about any ability of Sergeant Mercado to intervene in the harm caused to plaintiff.

The findings of excessive force by Officer Belardo and of failure to intervene by Sergeant Mercado are not just beyond the weight of the evidence, but they also indicate that the jury found that the contact between plaintiff and the police case was merely accidental, which does not rise to the level of intentionality required in the context of excessive force. See Brower, 489 U.S. at 597. Similarly, there is no evidence whatsoever that would allow a reasonable jury to find that Sergeant Mercado could have done anything to prevent the contact or had a reasonably opportunity to prevent that contact.

## CONCLUSION

For the foregoing reasons, the Court should grant defendants' motion pursuant to Federal Rule of Civil Procedure 50(b) and enter judgment as a matter of law for the defendants, or find that Officer Belardo and Sergeant Mercado are entitled to qualified immunity as a matter of law. Alternatively, the Court should grant a new trial pursuant to Federal Rule of Civil Procedure 59.

Dated:      New York, New York
            July 17, 2017

                                  ZACHARY W. CARTER
                                  Corporation Counsel of the City of New York
                                  *Attorney for Defendants Mercado and Belardo*
                                   100 Church Street, 3rd Floor
                                  New York, New York 10007
                                  (212) 356-2398

                          By:    /s/ _____
                                  Valerie E. Smith
                                  *Assistant Corporation Counsel*
                                  Carolyn Depoian
                                  *Senior Counsel*

- 23 -

cc:     <u>VIA ECF</u>
        Gregory Antollino, Esq.
        Daniella Nanau, Esq.
        *Plaintiff's Counsel*