**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

----------------------------------------------------------X
: 
**LÉRIN PIERCE,**                                      :
: 
**Plaintiff,**                         :
: 
-against-                                :                 **16 Civ. 5703 (BMC)**
: 
: 
**CITY OF NEW YORK, et al.**                           :
: 
**Defendants.**                       :
----------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGEMENT AS A**
**MATTER OF LAW PURSUANT TO RULE 50(b) AND MOTION FOR A NEW**
**TRIAL PURSUANT TO RULE 59 OF THE RULES OF CIVIL PROCEDURE**

Respectfully submitted by:

GREGORY ANTOLLINO, ESQ.                      LAW OFFICE OF DANIELA NANAU, P.C.
275 Seventh Avenue, Suite 705                89-03 Rutledge Avenue
New York, New York 10001                     Glendale, New York 11385
Telephone: (212) 334-7397                    Telephone: (888) 404-4975
E-mail: gantollino@nyc.rr.com                E-mail: dn@danielananau.com

ATTORNEYS FOR PLAINTIFF

**TABLE OF CONTENTS**

**Page Number**

TABLE OF AUTHORITIES                                                                                    ii

PRELIMINARY STATEMENT                                                                          1

SUMMARY OF THE EVIDENCE                                                                      3

Rafique Corroborates Plaintiff's Claim Testimony                                          3

Rafique Corroborates Plaintiff Regarding Defendants' Pre-Pursuit Conduct      5

Rafique's Testimony Corroborates Plaintiff's Claims Regarding Reckless Nature of
Defendants' Pursuit and Collision with Defendants' Patrol Car                        8

ARGUMENT                                                                                                    13

Legal Standard: Rule 50 Motion                                                                      13

Legal Standard: Rule 59 Motion                                                                      14

I.      Failure to Include Trial Transcripts Is Fatal Defect on Motion where Movants
        Have Burden to Show Totality of Evidence Supports Verdict in their Favor      15

II.     Defendants Are Not Entitled To Qualified Immunity                                  16

        A.  Defendants' Waived Qualified Immunity Defense                              16

        B.  Defendants' Qualified Immunity Defense Should Be Denied On Merits      18

III.    There Was Sufficient Evidence to Find Excessive Force and Failure to Intervene;
        Defendants Have Failed to Sustain their Burden under Rule 59                    22

        A.  Sufficient Evidence for Jury to Find Excessive Force Used To Affect Arrest      22

        B.  Sufficient Evidence for Jury to Find Defendant Mercado Failed to Intervene      24

CONCLUSION                                                                                                25

## TABLE OF AUTHORITIES

**CASES**                                                                  **Page Number**

*Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Bradford v. Currid*, No. CIV-15- 606-R,
     2016 U.S. Dist. LEXIS 121547 (W.D. Okla. June 10, 2016) . . . . . . . . . . . . . . . . 20

*Browers v. County of Inyo*, 489 U.S. 593 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21

*Chen v. County of Suffolk*, 07 CV 3698,
     2013 U.S. Dist. LEXIS 31712 (E.D.N.Y. Mar. 7, 2013) . . . . . . . . . . . . . . . . . . . . . 17

*Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Dancy v. McGinley*, 843 F.3d 93 (2d Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Fiacco v. City of Renesselaer*, 783 F.2d 319 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . .14

*Galdieri-Ambrosini v. National Realty & Development Corp.*,
     136 F.3d 276 (2d Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*Haywood v. Koehler*, 78 F.3d 101 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Hope v. Pelzer*, 536 U.S. 730 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*India.com v. Dalal*, 412 F.3d 315 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Sims*, 534 F.3d 117 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Kerman v. City of New York*, 261 F.3d 229 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . .18

*Le Grand v. Coughlin*, U.S. App. LEXIS 31867 (2d Cir. Nov. 10, 1997) . . . . . . . . . . . . 16

*Lore v. City of Syracuse*, 670 F.3d 127 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Manley v. AmBase Corp.*, 337 F.3d 237 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*McCardle v. Haddad*, 131 F.3d 43 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Myrick v. Borough, No.* 11-2791,
     2012 U.S. Dist. LEXIS 147003, (E.D. Pa. Oct. 12, 2012) . . . . . . . . . . . . . . . . . . . 20

*Nelson v. City of Madison Heights*, 845 F.3d 695 (6th Cir. 2017) . . . . . . . . . . . . . . . . . . . 21

*Piesco v. Koch*, 12 F.3d 332 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . 25

*Provost v. City of Newburgh*, 262 F.3d 146 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Reeves v. Sanderson Plumbing*, 530 U.S. 133 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

*Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Terry v. Ohio*, 392 U.S. 1 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Tolbert v. Queens College*, 242 F.3d 58 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Tracy v. Freshwater*, 623 F.3d 90 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Duffy*, 188 F. Supp. 2d 281 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 24

*U.S. East Telecomms. v. U.S. West Communs. Servs.*, 38 F.3d 1289 (2d Cir. 1994) . . . . . . 14

*Uzoukwu v. City of New York*, 805 F.3d 409 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Zellner v. Summerlin*, 494 F.3d 344 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## **STATUTES**

U.S. Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## **RULES**

Fed. R. Civ. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed. R. Civ. 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Fed. R. Civ. P. 50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## PRELIMINARY STATEMENT

A jury of their peers decided that Defendants Sonia Belardo ("Belardo") and Ivan Mercado ("Mercado") violated Plaintiff Lerin Pierce's ("Plaintiff" or "Pierce") Constitutional rights in recklessly subjecting him to excessive force, and, in the case of Defendant Mercado, by failing to intervene to stop the use of excessive force. Based on the evidence as a whole, the jury's verdict was reasonable in finding Defendants recklessly collided their patrol car with Pierce's body to affect his arrest and that Defendant Mercado failed to intervene.

Defendants' summary of the evidence (*see* Defs. Mem. at 2-6) is inherently self-serving[1], based on cherry-picked facts, and ignores all but a sliver of the evidence presented to the jury. Defendants' evidentiary presentation runs counter to the letter of Rule 50 and the spirit of 59 of the Federal Rules of Civil Procedure, not to mention the Seventh Amendment, which all require the Court to view the evidence as a whole, and all of the inferences it raises are to be viewed in favor of the non-moving party; here, the Plaintiff. Rule 59 allows a bit more leeway, but this is not the case to upset the promise of the Seventh Amendment. A disinterested third-party witness, Ahsin Rafique (who it should be noted, Defendants failed to identify in their Fed. R. Civ. P. 26 initial disclosures) gave testimony that, if credited, supports almost the entire verdict.

There was more than sufficient evidence to support the jury's determination that Defendants recklessly affected Plaintiff's arrest by use of excessive force. The jury's verdict demonstrates a detailed, careful weighing of the evidence, finding that Defendants' pursuit of Plaintiff, which Rafique testified occurred at 45 miles per hour, going against traffic on a busy

---

[1] Defendants' Memorandum of Law in support of their Motion for Judgement as a Matter of Law pursuant to Rule 50(b) and a Motion for a New Trial pursuant to Rule 59 of the Rules of Federal Civil Procedure, dated July 17, 2017, will be referred to herein as "Defs. Mem."

multiple-lane avenue with a large painted divider, was reckless, resulting in the car colliding into Pierce because of an allegation – dubious at that – of the theft of an item worth $100 or less.

Plaintiff's flight, moreover, was motivated by the fact that he believed he was free to leave, because no police officer said differently, and because of the prolonged discussion with Defendants about the ambiguous allegations and his consent to a search. The jury also reasonably believed Defendant Mercado had a duty to intervene during the pursuit, and he failed to uphold that duty by not telling Defendant Belardo to operate her vehicle more prudently, which would have avoided the collision, reasonably expected given that Defendants were working in tandem with other moving police cars, and knowing that Plaintiff was running on and off of the street. Prudence requires that one not swat a fly with a cannonball.  In all, the jury reasonably found – at a modest level of damages – that the police should not be mowing people down in the street. They reasonably believed that Defendant Belardo, and her supervisor, Sergeant Mercado – the highest-ranking police officer at the scene – acted recklessly.

Since the verdict in Plaintiff's favor is supported by sufficient evidence, Defendants argue, in the alternative, that they are entitled to qualified immunity. <u>But Defendants waived qualified immunity</u>. By not raising the affirmative defense as a basis for their Rule 50(a) motion at the close of Plaintiff's case-in-chief, Defendants' waived their right to raise the issue in their instant Rule 50(b) motion. If they had raised the affirmative defense properly, Plaintiff could have addressed the issue when the jury was present. But the defense kept their arguments a secret until now.

Even if the affirmative defense had not been waived – an assumption a Court cannot make when it is the Defendants' burden to prove – qualified immunity should not be granted because no reasonable police officer would fail to apprise a suspect that he was not free to go, then engage in a high-speed chase, taking an unnecessary witness against his will to make an identification that

had already been made, and colliding a patrol car into Plaintiff's body. What Defendants did was objectively incompetent. Their actions with the patrol car were an effort to correct a bad street encounter, and, at all costs, to preserve their dignity over Plaintiff's Constitutional rights. This is true particularly where the basis for Defendants' decision to stop and search Plaintiff was problematic (although Plaintiff does not rely on that). While Pierce withdrew the claim, Radio Shack manager Sharoon Samuel, never testified, leaving the jury with unanswered questions.  In comparison, Plaintiff's allegations were corroborated by Rafique, the only third-party witness.

To grant immunity (or a new trial), the Court would have to set aside reason and the jury's verdict, which contained a powerful message about societal intolerance of police misconduct. Defendants lost because they overstated their case and tried to blame this entire incident on Plaintiff. The jury rejected Defendants' narrative about Pierce's malevolence, cunning, and patently unbelievable powers to leap over cars, and scurry into train stations. The jury was not moved by Defendants' contradictory and disjointed tale; rather, they held Belardo and Mercado accountable for their own misconduct. Had Defendants engaged Plaintiff as the Constitution requires, rather than providing him with no notice of an intent to arrest, coupled with a reckless, high-speed pursuit, there would be no basis for this lawsuit. But now we have to deal with the consequences of reality in accordance with the law. For all of reasons stated herein, the Court should not disturb the jury's verdict and should deny Defendants' Motions entirely.

## SUMMARY OF THE EVIDENCE

### 1. Rafique Corroborated Plaintiff's Testimony

Ahsin Rafique ("Rafique"), the non-managerial Radio Shack employee, was the only disinterested witness to testify at trial. Rafique's testimony regarding the events he witnessed on September 1, 2014 corroborate Plaintiff's allegations concerning the information Defendants had

regarding the Radio Shack incident, and Defendants reckless use of force in affecting his arrest. *See generally* trial transcript from June 15, 2015 attached as Ex. 3.[2]

In keeping with the theme of overstating their case, Defendants' claimed at various points during trial that two (2) witnesses identified Pierce as having allegedly stolen a cell phone case. *See, e.g.,* Sergeant Mercado's testimony, reproduced in relevant part below, states:

Q       How many people identified the plaintiff?

A       Two.

Q       Who were those individuals?

A       It was the store manager and the store employee.

*See* Ex.2, 271:17-20. This was false. Rafique testified that he did <u>not</u> witness any interaction between Pierce and Sharoon Samuel ("Samuel"), the Radio Shack manager, because he was not at the store. Rafique testified that Samuel, his boss, encountered him on the street on his way to work, after the incident with Pierce, and immediately directed Rafique to help him follow Plaintiff and call 911 to report the alleged theft based on information provided to Rafique second-hand:

Q       But something happened to stop you from going to the Radio Shack store, and what was that?

A       That was – my manager at the time flagged me over and told me that someone had taken something.

Q       Without getting into what someone had said, what did he tell you to do?

A       To follow – help him follow Lerin.

---

[2] In light of Defendants' failure to produce the entire trial transcript for the Court's review, which Plaintiff believes to be a fatal defect (*see* Point I *infra* at 15), Plaintiff is providing it. The transcript from the first day of trial, June 12, 2017, is attached hereto as "Ex.1"; the transcript from the second day of trial, June 14, 2017, is attached hereto as "Ex.2"; the transcript from the third day of trial, June 15, 2017, is attached hereto as "Ex.3"; and, the transcript from the fourth, and last, day of trial, June 16, 2017, is attached hereto as "Ex.4." The testimony from each exhibit is cited page and line number as follows: Ex. ?, page number: line number – page number: line number.

*          *          *

Q       That was the first time you had seen him that day, correct?

A       Yes.

Q       All right. And Mr. – is it Samuels or Samuel?

A       I believe it's Samuel.

Q       All right. Mr. Samuel was your supervisor?

A       Yes. He was the manager of the store.

*          *          *

Q       All right. You didn't see anything that happened in the store earlier than meeting him on the street that day, correct?

A       Correct.

*          *          *

Q       So Mr. Samuel told you to do something. And what – just say what you did.

A       I was helping him follow Lerin.

Q       All right. And did you call in?

A       911.

Ex. 3., 350:1-10, 19-25; 351: 5-8, 19-23.

The jury credited Plaintiff's claim, corroborated by Rafique, that the only person who positively identified him to the police was Sharoon, who initiated the confrontation with Pierce at Radio Shack when he said to Plaintiff: "[A]re you going to buy this or are you going to steal this?" *See* Ex. 1, 76:18-19. A question as to whether a crime is going to be committed is not the same as an allegation that a crime actually was actually committed. The parties don't have to call all of the witnesses, but the defense made a strategic decision not to call Samuel. The jury could have reasonably made an adverse inference based on his absence.

**2.  <u>Rafique Corroborates Plaintiff Regarding Defendants' Pre-Pursuit Conduct</u>**

Throughout the trial, Defendants attempted to deflect attention away from their own reckless conduct by attributing to Plaintiff certain alleged malevolent intentions and conduct that

5

Pierce denied and there was no evidence to support otherwise. A jury could reasonably have <u>not</u> believed them, given the totality of the evidence at trial, as it did.

For example, part of Defendants' recklessness included their failure to provide him clear notice of their intent arrest – or that he was being detained. Although his co-defendants testified differently, Sergeant Mercado, the highest-ranking police officer at the scene, admitted that no one told Pierce he was under arrest (and Belardo corroborated this by admitting no one told Pierce he was not free to leave, *see* Ex. 3, 404:16-19) before he fled the scene on Fulton Street. Mercado even admitted it was his practice to inform someone of their impending arrest before it happened:

Q      All right. While you were talking, Mr. Pierce was not under arrest is that correct?

A      He was not handcuffed, but he was not free to go.

Q      Was he – could you answer the question as to whether he was under arrest at that point?

A      At that point, he was not in full custody, no.

Q      Okay. So the answer is yes, he was not under arrest; correct?

A      He was not handcuffed no. He was not under arrest, no.

                    *       *       *

Q      All right, if you are going to arrest someone, you say, Sir, you are under arrest, correct? [. . .]

Q.     Do you always tell people you are arresting, You are under arrest; do you use those words?

THE WITNESS: Depending on the situation. . . .

Q      More often than not, correct.

A      Yes.
Ex. 2, 252:11-19; 237:12-22.

However, in an effort to avoid responsibility for his ineffective leadership, demonstrated by Defendant Mercado's failure to provide notice of an intent to arrest Pierce before the pursuit (as well as his failure to intervene), Mercado resorted to shifting the blame to Plaintiff by making self-serving remarks that suggested Pierce was uncommunicative and focused on plotting his alleged "escape," which was corroborated by no one else, and therefore testimony that the jury reasonably did not have to credit:

Q    What questions did you ask Mr. Pierce?

A    Was he in Radio Shack? There were allegations that I said the manager said that he had stolen a cell phone or a cell phone case.

Q    How did the plaintiff respond?

A    He didn't give me a response. He just looked at me.

*      *      *

Q    And after you made the comment about the video surveillance, how did the plaintiff respond?

A    Again, he looked at me and he looked towards the left, towards the right, and he didn't give me a response.

*      *      *

Q    And what happened next?

A    I asked him if I could look inside – he had a backpack – could I look inside of the backpack.

Q    Why did you want to look in the plaintiff's backpack at this point?

A    For one, for my safety, if he had any weapons, maybe if he had any merchandise from Radio Shack.

Q    How did the plaintiff respond?

A    He didn't give me an answer. He just stuck out his hand, took off his backpack and stuck out his hand with his backpack like this (indicating).

Ex. 2, 271:4-9, 21-24; 272: 6-16.

In contradistinction to Mercado's self-serving testimony, Belardo testified that Pierce was communicative, maintaining his innocence throughout the encounter on Fulton Street, which corroborates Plaintiff's testimony. *See* Ex. 1, 81:22-83:6 (describing how he and the Defendants "were basically going in a circle in a dispute" about what happened at the Radio Shack and the back and forth went on for "[a]bout 15 minutes or more"). Although Belardo's testimony regarding the substance of Plaintiff's alleged remarks has changed over time, and became more self-serving at trial, she nevertheless corroborated Plaintiff's claim that he and the three Defendants were engaged in discussion regarding the theft allegation and he continually maintained his innocence:

Q      Ms. Belardo, you said just now in the testimony that you gave that Mr. Pierce said to you when you questioned him, "I gave it back," correct?

A      Correct.

Q      And you have already told me that you recall your deposition from January 2017, correct, when Mr. Antollino asked you questions and you have answers?

A      Correct.

Q      [She was then impeached. Were you asked and answered the following:]

       What did he say?. . . [Y]our answer was: "He said he didn't steal nothing." Is that the testimony that you gave then, ma'am?

A      If that's on it, yes.

Ex. 3, 429: 9-24.

### 3. Rafique's Testimony Corroborates Plaintiff's Claims Regarding Reckless Nature of Defendants' Pursuit and Collision with Defendants' Patrol Car

Unlike Defendants' self-serving description of their reckless pursuit of Plaintiff (that has changed over time), Rafique provided consistent testimony regarding the collision throughout this litigation, which the jury reasonably credited. Rafique testified that Defendant Belardo was driving the cruiser at a rate of "forty to forty-five miles per hour" during the pursuit. Ex. 3, 355:3-5.

Moreover, while being questioned by defense counsel, Rafique denied that plaintiff intended to collide with the care, as Defendants suggested. Rather, Rafique testified Pierce appeared to lose him balance and stumble while he was crossing the street, and at that point the police cruiser collided into Pierce, which Rafique described as a "pretty decent hit":

> Q    But the plaintiff ran right in front of the car; is that correct? . . .
>
> A    He was – well, when he was trying to cross the street, it sort of looked like he was tumbling, and then that's when he ran directly in front of the car. That's when the car collided.
>
>                *      *      *
>
> Q    All right. And did you – when you spoke to the officer about the collision with the car, do you remember how you described it?
>
> A    I remember saying that it was a – it was a pretty decent hit, I believe.

Ex. 3, 365: 3-10; 359:23-360:2.

Rafique's recounting of Defendants' reckless pursuit of Pierce with the patrol car, and the circumstances of the collision, corroborate Plaintiff's testimony that he was attempting to run across the street, away from Defendants' patrol car, when it collided into him:

> Q    When you were running down the street, were you running in the direction of traffic?
>
> A    No. I was running straight across the street.
>
> Q    I know you were running across the street at one point, but before you turned, were you running with traffic?
>
> A    Oh, yes. Correct.
>
> Q    And then you crossed the street. And did you make it across the median into the other side of the street?
>
> A    As I ran across the street, I made it to the other side of oncoming traffic in the first land.
>
> Q    Okay. And then what happened?
>
> A    Then I was struck by a car, by the car that Officer Belardo and Sergeant Mercado w[ere] in.

Ex. 1, 88:8-20.

  More importantly, Rafique's recounting of the reckless pursuit and the collision is at odds with Mercado and Belardo's description of the same sequence of events.  For example, on the one hand, Mercado and Belardo both testified that the pursuit of Pierce involved a call for back-up and multiple police cars, some of which had sirens and lights on. Ex. 2, 255:22-256:23. According to Belardo, she put on the siren and lights of the patrol cars she was driving, at Sergeant Mercado's direction, to "let[] people know we have an emergency" and she testified that cars around her responded by "trying to get out of the way, some of them just freeze, and some of them just keep on driving." *See* Ex. 3, 421: 21-22; 422:3-5.

  Despite this scene that Defendants Belardo and Mercado painted for the jury, complete with blaring sirens, multiple police cars, and a high-speed pursuit, they then unbelievably claimed at trial, for the first time in this litigation, that this this high-stakes "chase" after Plaintiff was more like a crawl because of alleged stalled traffic on Flatbush Avenue. *See* Ex. 3, 422: 15-20 (claiming, that she was behind Defendant Taqi, who was on foot, "because I can't go no faster" due to traffic, even though every person who testified at trial stated that Taqi arrived on the scene well after Defendants Belardo and Mercado). Similarly, Defendant Mercado claimed the patrol car was going "20 miles an hour," significantly slower than the 45 miles per hour Rafique testified the patrol car was going when it collided with Pierce to make a "pretty decent hit":

> Q  And just to be clear for the jury, Sergeant Mercado, at the time that the plaintiff ran into your vehicle, how fast was the car going?
>
> A  I would say maybe like 20 miles an hour on Flatbush Avenue at noon, 20 miles an hour. I was going about 20, 25.

Ex.2, 284:10-14.

  In another effort to turn the jury against Pierce by "embellishing" allegations regarding his alleged misconduct to deflect attention away from their recklessness, Defendants claimed

throughout the trial, including both in defense counsel's opening and closing, and the testimony of Defendants, that Pierce ran purposefully ran into the patrol car, in an alleged failed effort to leap over it, *en route* to Atlantic Terminal, a plan that existed in no one's mind except for Defendants' – or that of defense counsel.  In her opening, Valerie Smith made far-fetched claims (*see* Ex 1., 40:8-44:16, indicating that Plaintiff tried to "run away from his problems," "attempted to make a get-away" by going to Atlantic Terminal, and "trie[d] to jump over the hood; but we aren't in the movies and instead of making that cool jump and slide across the hood of a car that we've all seen movie stars do, the plaintiff ends up getting clipped[.]"). Themes like this were weakly reiterated throughout in defendants' testimony. In addition, they maintained that Rafique was credible at trial, although they abandon that now. *See* Defs. Mem. at 20-21, where they claim Rafique's testimony, that Defendants' patrol car was going 45 miles per hour, is "not credible" based on the wrong assumption that Rafique's testimony could only be true if Plaintiff was running faster than 45 miles per hour. The problem with this argument is that no one testified Pierce and the patrol car were moving at the same rate of speed and logically that would not happen in a pursuit because, by definition, Plaintiff was in front. Defendants' citation to the Guinness World Records, while catchy, does nothing to support their logic.)

Defendants hyped the evidence they had on this issue to the jury, as they did on many other issues, which would encourage a reasonable juror to discount such testimony, or all of the defense testimony under the *falsus in uno* doctrine.  For example, when pressed for specific information to support his theory that Pierce purposefully collided with the patrol car in an effort to leap over it and run to Atlas terminal, Mercado could offer only his own opinion with no details:

Q    Okay? Is it your belief that Mr. Pierce tried to jump over the car; is that correct?

A    Yes.

\*       \*       \*

Q       So, your belief was that he was going to jump on top of the car and then continue running, not over the car?

A       Possible on the hood, continue running. Maybe possibly over the car.

Q       Okay. And that was your believe or that was – how did you come to that conclusion?

A       That's what I saw him attempt to do.

Ex.2, 258: 23-25; 259: 6-12.

Even when the Court intervened to clarify the situation further, Mercado never described intentional conduct that suggested Plaintiff was actively trying to collide with the patrol car or jump on the hood as Defendants maintained:

THE COURT:          . . . Let me ask you this. When he went over the car, did he put his hands on the car because his feet left the ground?

THE WITNESS:          No.

THE COURT:          Okay. Where was he in relation to the front wheel well when he went to the car?

THE WITNESS:          To the right – I was in the passenger side, the right passenger wheel well. He was on the right side coming from the right side of the sidewalk.

Ex.2, 259:23- 260:7.

From this, the jury could conclude that Mercado merely observed Pierce's efforts to avoid the collision, which corroborates Rafique's testimony, discussed above, wherein he said he witnessed Pierce stumble into the street. Mercado's failure to ascribe specific details proving Pierce's intent also matches Plaintiff's testimony that the collision occurred when Defendants pinned him into a corner with the assistance of the tan unmarked patrol car in the following:

Q       What about the other car? Did you see the other car at that point?

A       At what point? When I was struck?

Q       Yes.

12

A     I didn't see the car when I was struck. I saw the cars as I ran across the street. Like I said, the car was, you know, basically there to contain me.

THE COURT: Hang on. Let's put another question.

Q     Don't make an assumption about what it was trying to do, but it was behind the patrol car, correct?

A     No, the tan car was in front of the patrol car. The tan car was the car that was there and I crossed the street. Like I said, it would pull up and it would back up. What it backed up, I ran across the street. The [tan] car had stopped . . . and I ran one, two, three median[s]. I ran across four lanes and then as I was, again, crossing the lane with oncoming traffic, that's when I was hit.

Ex.1, 88:24-89:15.

The jury credited Pierce and his witnesses, because their testimony was believable, not the fantastic fairy-tale encounter Defendants contrived. Barring legal error (and there was none), the Seventh Amendment and Fed. R. Civ. P. 50 require that the verdict be upheld.

## ARGUMENT

### Legal Standards: Rule 50 and 59 Motions

Under Fed. R. Civ. P. 50, trial courts "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150-51 (2000). It is beyond cavil that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are *jury functions*, *not those of the judge*. . . . Thus, although the court should review the record as a whole, *it must disregard all evidence favorable to the moving party that the jury is not required to believe*." *Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2007) (emphasis added and in original) (quotation marks and citation omitted). In other words, "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that

is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves*, 530 U.S. at 151 (quotation marks and citation omitted).

Thus, a district court may grant a motion for judgment as a matter of law "only if it can conclude that, with credibility assessments made against the moving party and all inferences drawn against the moving party, a reasonable juror would have been *compelled* to accept the view of the moving party." *Zellner*, 494 F.3d at 370-71 (quoting *Piesco v. Koch*, 12 F.3d 332, 343 (2d Cir. 1993) (emphasis in *Zellner*). In ruling on such a motion, the court must bear in mind that the jury is free to believe part and disbelieve part of any witness's testimony. *See, e.g., Fiacco v. City of Rensselaer*, 783 F.2d 319, 325 (2d Cir. 1986), *cert. denied*, 480 U.S. 922 (1987).

Defendants' maintain that "in deciding a Rule 59 motion, a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." *See* Defs. Mem. at 8-9.  True, but they don't get a second bench trial; the moving party must meet the standard for review under Rule 59 *first* – an extremely high burden that Defendants have failed to meet here as will be addressed in more detail *infra* at Point III below. The law on Rule 59 is well-known.  "[F]or the district court to order a new trial under Rule 59(a), it must conclude that the jury has reached a seriously erroneous result . . . or the verdict is a miscarriage of justice. *Manley v. AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003). That's a tremendous power, which should not be exercise here where the Court denied summary judgment, indicated the parties were at the same place at summary judgment after Plaintiff's case-in-chief closed, and a jury deliberated and came up with a particularized verdict making thoughtful distinctions. *U.S. East Telecomms. v. U.S. West Communs. Servs.*, 38 F.3d 1289, 1301 (2d Cir. 1994).  Moreover, the trial court may base its reasoning in denying a Rule 59 motion for "similar reasons" as it denies a Rule 50 motion, even

wherein, unlike in the instant case, the motion was preserved. *See India.com v. Dalal*, 412 F.3d

315, 320 (2d Cir. 2005); *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (same).

## I.     Failure to Include Trial Transcripts Is a Fatal Defect on Motion where Movants Have Burden to Show Totality of Evidence Supports Verdict in their Favor

As the moving parties, Defendants shoulder the burden of proving sufficient evidence (or

lack thereof) to support their post-trial motions brought pursuant to Rule 50 and Rule 59 of the

Federal Rules of Civil Procedure. In accordance with relevant standards, the Court is expected to

view the evidence as a whole. But Defendants have purposefully attempted to constrain the Court's

ability to accomplish that task by providing only those pages of the trial transcript that reflect their

cherry-picked version of the trial, which bears little resemblance to the reality of what happened,

as demonstrated above in Plaintiff's Summary of the Evidence. *See infra* at 4-13.

In an effort to explain away this defect, defense counsel asserts that Defendants are not

providing the trial transcript because they are "following the Court's Individual Rules of Practice

as they pertain to Motions for Summary Judgment." *See* Declaration of Valerie Smith, dated July

17, 2017, Docket No. 137, at 1, fn 1. Although the relief is similar, the *standards* that define a Fed.

R. Civ. P. 50 post-trial motion, and a motion for summary judgment are different. The latter

requires the Court to determine whether there are "material issues of fact" that require adjudication

by a fact finder. But *Reeves* makes plain that Fed. R. Civ. P. 50 requires that "the court should

review *the record as a whole*" in favor of the non-moving party. 530 U.S. at 151 (emphasis added).

Defendants' failure to provide the information the Court needs to determine if they have

met their burden is pure gamesmanship, inexcusable at this late stage in the proceeding, after the

Plaintiff has won at trial. To the extent that Defendants tender any excuse for this mistaken

discourtesy, the Court should dismiss those excuses as invalid, particularly if the excuse has to do

with cost. The Court should be aware that Plaintiff's attorneys made every effort to coordinate

with defense counsel to share the cost of the trial transcripts, during the trial and thereafter, as indicated in the attached email exchange between Daniela Nanau and Carolyn DePoian.  Ex. 5. Ultimately, Plaintiff had to buy the transcript to oppose the motion. We can afford it, but not every non-movant can. We provide the transcript as a courtesy, but do not waive this defect, especially when we offered to save the defense costs by tendering half the cost they paid. <u>Why would the City turn down money to defray costs and make us purchase a second transcript other than to gain unfair advantage where either side, and the Court, would need the transcript?</u>

Because Defendants failed to provide the Court with the information needed to assess their post-trial motions, the Court should deny their motions for this reason alone. *See Le Grand v. Coughlin*, U.S. App. LEXIS 31867, at \*5-6 (2d Cir. Nov. 10, 1997) (appeal dismissed for failure of party to supply transcript). An appeal is not a post-trial motion, but both seek similar relief. This is an argument of first impression, but it makes eminent sense.

## II.    <u>Defendants Are Not Entitled To Qualified Immunity</u>

### A.  <u>Defendants Waived the Qualified Immunity Defense</u>

Defendants argue that they are entitled to qualified immunity because "defendants possessed probable cause for plaintiff's arrest" and it was allegedly "objectively reasonable that Officer Belardo would pursue the plaintiff . . . [and] Sergeant Mercado was not obligated to intervene." *See* Defs. Memo at 20.  However, because Defendants did not move, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, on this ground at the close of Plaintiff's case-in-chief (*see* transcript of Defendants' Rule 50(a) motion, which was denied by the Court, Ex. 3, 434:14-435:19), they have waived their right to pursue it.  Rule 50 provides, in relevant part that "[a] motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the

movant to the judgment."  Fed. R. Civ. Proc. 50(a)(2). It is beyond cavil that "a posttrial motion for JMOL can properly be made only if, and to the extent that, such a motion specifying the same grounds was made prior to the submission of the case to the jury." *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997); *Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir. 2001).

Following the completion of Plaintiff's case, Defendants moved, pursuant to Rule 50(a), for judgment as a matter of law.  They made only the following arguments: (1) all defendants were entitled to judgment as a matter of law concerning Pierce claims of excessive force and failure to intervene; (2) there was third-party testimony that Defendant Belardo applied the brakes of the patrol car that collided into Plaintiff and there testimony that "she did not speed up or accelerate when the plaintiff was in the street"; (3) and, with regarding to the excessive force employed by Defendants after the pursuit, Plaintiff "at no point identified any of the defendants as being responsible for the punching or kicking . . [and] [t]he plaintiff has the burden to show that there was personal involvement."  Ex. 3, 434:14-435:19. A cursory review of Defendants' oral motion reveals that defense counsel never uttered the words *"qualified immunity."* Ex. 4, 434:14-435:19. As such, Second Circuit Black letter law is that Defendants' motion is waived. *Provost v. City of Newburgh*, 262 F.3d 146, 161 (2d Cir. 2001); *Chen v. County of Suffolk*, 07 CV 3698, 2013 U.S. Dist. LEXIS 31712, *7-18 (E.D.N.Y. Mar. 7, 2013). *See also Sykes v. Anderson*, 625 F.3d 294, 304 (6th Cir. 2010).[3]

---

[3]  The purpose behind Rule 50(a)'s specificity requirement is to provide the non-movant with the opportunity to cure any alleged defects in the sufficiency of his/her proof. *Galdieri-Ambrosini v. National Realty & Development Corp.*, 136 F.3d 276, 286-87 (2d Cir.1998) (citations omitted). By failing to move for judgment as a matter of law on the issue of qualified immunity, Defendants Mercado and Belardo prevented Plaintiff from curing any perceived defects. This is no mere technicality; this is a sandbag attempt to disallow Plaintiff to offer proof to defeat the affirmative defense.

**B.  Defendants' Qualified Immunity Defense Should Be Denied On Merits**

A Hail Mary pass after trial does not *prove* qualified immunity defense even if pled; if it did, the motion would be meritless anyway.  Qualified immunity is intended to ensure that before an official is subjected to a lawsuit, that the official is on notice that the alleged conduct is unlawful. *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002). Thus, if the law is "clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982); *accord Kerman v. City of New York*, 261 F.3d 229, 237 (2d Cir. 2001) (qualified immunity should be denied "where it is sufficiently clear that a reasonable official would understand that what he is doing violates the law").  Here, it was clearly established as on September 1, 2014, Pierce had the right to be arrested without excessive force, which included a reckless car chase and a collision. Defendants *asked for* an instruction on recklessness in the context of the car chase (*see* Ex. 4, 454:10-17), so if they suggest that recklessness, as implicitly found by the jury, should be voided on the grounds of qualified immunity, Defendants are asking the Court for relief from what they wanted.[4]

Defendants' argument, that they are entitled to qualified immunity because the alleged "accidental contact of the vehicle with plaintiff does not constitute a Fourth Amendment seizure and does not violate any clearly established law" because "the contact between plaintiff and the vehicle was unintentional" and "Plaintiff assumed the risk of being struck by any vehicle when he ran into traffic," *see* Defs. Mem. at 18-19, is unsupported by the record and relevant caselaw.  Their attempts to sugar-coat the facts by failing to acknowledge Belardo and Mercado's own

---

[4] To ask the Court for an instruction, then claim error when we relied on it in summation, is violation of Defendants' obligations as defined in Fed. R. Civ. Pro. R. 1, which states that the parties are observe the rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." There can be nothing less "just, speedy, and inexpensive" than a party's asking for an instruction, then seeking relief from the court for their having gotten that instruction.

recklessness in (a) not informing Plaintiff of his arrest (or detention); or (b) grossly overacting to his flight, leading to the high-speed chase after Pierce that ended in the patrol car colliding with Plaintiff, enabling Defendants to affect the arrest. *Cf.* Defs. Mem. at 18-19 (discussing how objectively reasonable Belardo was in applying her breaks when she saw Plaintiff in close proximity to the patrol car before the pursuit ended in the collision). Taking a snapshot in a moment in time credits the defense testimony and does not recognize that Berlardo applied the brakes  only because she hit Plaintiff after a high-speed chase (for the City); they knew there were other cars in approach and that Plaintiff was running on and off the sidewalk.

In *Browers v. County of Inyo*, 489 U.S. 593 (1989), the Supreme Court rejected the relevance of the police officers' intent, even though "[the police] here preferred, and indeed earnestly hoped, that [plaintiff] would stop on his own, without striking the barrier" they erected to end their pursuit of him. The Court should reject the argument now, as it previously has, Defendants' argument based on the lack of established intentionality, which is not rightly part of the calculus. *See* Defs. Mem. at 19-20. Indeed, the Court rejected Defendants' position regarding the relevance of the intentionality of Defendants' misconduct at the Charging Conference. *See* Ex. 4, 454:21-455:13. Then, the Court specifically stated that, in light of Second Circuit caselaw, including *Dancy v. McGinley*, 843 F.3d 93 (2d Cir. 2016), what Defendants intended during the pursuit was irrelevant because there was no dispute that the collision between Defendants' patrol car and Plaintiff's body occurred and that "that physical encounter was deliberate":

> I have looked at that issue, and the Second Circuit has taken "intentionally [and knowingly]" out of the case . . . at least in those cases where there is no dispute that some level of physical encounter occurred. And there is no dispute that the physical encounter was deliberate. . . . [T]he test is one of objective reasonableness; and therefore, it does not really matter what a defendant intended once, in fact, force has been applied.

Ex. 4, 454:21-455:13 (*citing Dancy*, 843 at 118-20). *Accord Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) ("[t]he Fourth Amendment test of reasonableness '*is one of objective reasonableness*,' the inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake") (reversing and remanding) (emphasis added). Therefore, Defendants' reliance on cases, some unpublished, unappealed district court cases from outside of this Circuit, focusing on intentional conduct of the defendant police officers, is misplaced. *See* Defs. Mem. at 18-19 (citing *Myrick v. Borough, No*. 2012 U.S. Dist. LEXIS 147003, at *17-18 (E.D. Pa. Oct. 12, 2012); *Bradford v. Currid*, No. CIV-15- 606-R, 2016 U.S. Dist. LEXIS 121547, at *10 (W.D. Okla. June 10, 2016)).

Moreover, contrary to Defendants' reading of *Brower v. County of Inyo*, 489 U.S. 593, the case supports Plaintiff position, as well as the Court's view at the Charging Conference: under the circumstances, where the collision was deliberate – insofar as a chase occurred and Plaintiff was struck – that is a violation of the Fourth Amendment. In *Brower*, the plaintiff was the driver of a stolen automobile, who was killed at the end of a high-speed nighttime chase when his vehicle collided with a truck that county police officers had positioned across the road to serve as a roadblock. *Id*. at 595. In reversing the Ninth Circuit, which affirmed dismissal of the case, the Supreme Court opined as follows regarding the Fourth Amendment violation alleged:

> Petitioners have alleged the establishment of a roadblock crossing both lanes of the highway. *In marked contrast to a police car pursuing with flashing lights, or to a policeman in the road signaling an oncoming car to halt, a roadblock is not just a significant show of authority to induce a voluntary stop, but is designed to produce a stop by physical impact if voluntary compliance does not occur*. It may well be that respondents here preferred, and indeed earnestly hoped, that Brower would stop on his own, without striking the barrier, but we do not think it practicable to conduct such an inquiry into subjective intent.

489 U.S. at 598 (emphasis supplied). Similarly, notwithstanding their claims to the contrary, Defendants did not merely flash their patrol car lights to encourage Pierce to stop so they could affect his arrest. *Cf.* Defs. Mem. at 18. Like the police officers in *Brower*, Defendants Belardo and Mercado pursued Pierce in a high-speed chase in a reckless manner, in tandem with the tan undercover car, that was also "designed to produce a stop by physical impact if voluntary compliance did not occur." Under such circumstances, the Supreme Court held that "it [is] enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result." *Id.* at 599. As the Sixth Circuit recently stated, "[d]eliberate indifference has been equated with subjective recklessness, and requires the § 1983 plaintiff to show that the state official knows of and disregards an excessive risk to the victim's health or safety." *Nelson v. City of Madison Heights*, 845 F.3d 695, 702 (6th Cir. 2017) (citations omitted). Plaintiff showed that. Drivers of all cars know the risk they might pose to pedestrians; the police are not entitled to special rights in excessive use of their patrol cars.

Unlike the majority of pursuit cases, Defendants here *instigated* the pursuit of Pierce by conducting their street stop, failing to let him know he was not free to leave, a clear and established right under the Constitution. *Uzoukwu v. City of New York*, 805 F.3d 409, 415 (2d Cir. 2015) (reiterating well-settled principle that "[a]n individual to whom a police officer addresses a question has a constitutional right not to respond. He may remain silent or walk or run away. His refusal to answer [a police inquiry] is not a crime.") (emphasis added). Even if the Court believes the police could legally detain Plaintiff, *they never told him* he was being detained. Then, Belardo and Mercado engaged in an over-correct of the situation, by recklessly pursuing Pierce, pinning him onto a median with traffic on all sides, and colliding into his body to affect the arrest.

Similarly, Defendants' argument for Mercado's immunity for failure to intervene has no

merit: it is supported by a baseless, self-serving syllogism and no on-point caselaw. Defs. Mem. at 19-20. Contrary to Defendants' position in their post-trial brief, at trial, the highest-ranking police officer, Mercado, admitted Pierce was never notified of their intent to actually arrest him; as such, Plaintiff believed he was free to leave. *See infra* discussion at 7-9. Therefore, the assertion that "Sergeant Mercado was not obliged to intervene" "[g]iven the lawfulness of Officer Belardo's pursuit," (*see* Defs. Mem. at 20) is not supported by Defendants' own testimony at trial. Moreover, as *Browers* and its progeny establish, using excessive force to end a reckless pursuit of a suspect, which was initiated by the police, to affect his arrest, *in itself*, is unconstitutional. Therefore, Sergeant Mercado – a supervisor with more experience and authority to call the shots – failed to intervene and stop the unconstitutional conduct. This is a textbook example of failure to intervene. *See Anderson v. Branen*, 17 F.3d 552, 558 (2d Cir. 1994) (reversing and remanding for new trial where district court failed to give failure to intervene instruction where jury could have reasonably determined defendant police officer engaged in unconstitutional conduct when standing by while two other police officers stood over suspects curled body and allegedly abused him).

## III. There Was Sufficient Evidence to Find Excessive Force and Failure to Intervene; Defendants Have Failed to Sustain their Burden under Rule 59

### A. Sufficient Evidence for Jury to Find Excessive Force Used To Affect Arrest

During the trial, and throughout their moving papers, Defendants demonstrate a fixation on standards that are irrelevant to either of their post-trial motions. Even though they *asked* for an instruction on recklessness (Ex. 4, 454:10-17), Defendants' argument at closing focused on Defendants' lack of intentionality, which is not at issue, as the Court repeatedly noted (as discussed *infra* at 20). For example, regarding Belardo's conduct during the pursuit and at the time of the collision, Defendants' argued:

> Officer Belardo did the exact opposite of speeding. She slammed on her brakes to avoid hitting Plaintiff. We know this is true not only because Belardo and Sergeant Mercado told you it was true, but Ashin Rafique[,] who was sitting in the backseat of car that day, told you himself that Plaintiff ran in front of the car and Officer Belardo hit the brakes when she saw him.

Ex. 4, 477:25-478:10.

Similarly, throughout their discussion of the alleged insufficiency of the evidence to support their motions brought Rules 50 and 59, Defendants' discuss "[t]he objective evidence" without defining the term, refer to deliberate conduct (the collision) as "accidental" when that term is irrelevant to the standards at issue, and repeatedly violate the standards they must meet to win the post-trial motions by providing a cherry-picked narrative[5] of the events at issue, with all inferences raised in favor of Defendants. *See* Defs. Mem. at 14-23.

Here, the jury reasonably inferred Belardo's recklessness, which was also objectively unreasonable. Plaintiff testified that he saw Belardo speed up. Ex. 2, 198:21-199:1. The jury reasonably believed that Belardo made a reckless attempt to catch up with Pierce without weighing the fact that she was in a car and he was on foot, in the middle of several lanes of traffic, with no physical barrier to protect him from a possible impact, which occurred. Moreover, Defendants' make too much of Belardo's use of the brakes, which (it is undisputed) happened at some point; the dispute is about when it happened. Plaintiff did not characterize Belardo as crazy, just reckless; looking at her actions – and those of Mercado, who failed to intervene as the supervisor who was

---

[5] Defendants' self-serving assumptions about weight of the evidence, such as their claim that the jury "did not credit any of the plaintiff's testimony" (*see* Defs. Mem. at 15) ignores their burden and caselaw that the jury is entitled to piece together the testimony of the witnesses in such manner as it deemed credible. *Haywood v. Koehler,* 78 F.3d 101, 105 (2d Cir. 1996) (jurors are "free to accept bits of testimony from several witnesses and to make reasonable inferences from whatever testimony they credit[]"); *Lore v. City of Syracuse*, 670 F.3d 127, 150 (2d Cir. 2012) (same).

sitting right next to her – as a whole.[6] The proximate cause of the collision was Defendants' recklessness, and the "pretty decent hit" is an excessive use of force notwithstanding that Belardo slammed on the brakes afterwards. The jury found that both Belardo and Mercado were reckless because they should have known their driving could well have resulted in an accident of *some* kind – and specifically with regard to Plaintiff whom they were pursuing, knowing he was in the street with another police car coming their way.

### B.  Sufficient Evidence for Jury to Find Defendant Mercado Failed to Intervene

Defendants' argument, that there was insufficient evidence to support the jury's finding that Defendant Mercado failed to intervene, is premised on the specious assertion that "Plaintiff failed to present any evidence demonstrating Sergeant Mercado had reason to know that Officer Belardo would use excessive force" or that Mercado had "any realistic opportunity to intervene[.]" Defs. Mem. at 9-10. As stated previously, Plaintiff avers that the reality of what the jury heard, and reasonably credited at trial, is quite different from the chosen narrative Defendants offer now.[7]

With his own testimony, Mercado made clear that he was in charge of the patrol car being driven by Belardo.  Ex. 2, 257: 13-248:12 ("We turned on our lights and sirens" and "I followed on the street with  Officer Belardo, lights and sirens on Flatbush Avenue").  Mercado also testified that the street stop took five (5) minutes, and the whole incident took 20 minutes, which means the jury could have reasonably surmised the pursuit lasted about ten (10) minutes. *Id.*, 251:14-23. The

---

[6] There was other evidence of recklessness the jury could weigh, such as Belardo and Mercado's decision to keep Rafique, a third-party who witnessed *nothing*, locked up in a patrol car that was about to go on a high-speed pursuit, recklessly subjecting him to the possibility of injury.

[7] Defendants' arguments that Mercado had "a couple of seconds" to respond to the situation during the pursuit with no time for him to direct Belardo to drive in a more prudent manner, or that Mercado had no reason to believe there could be a collision – should be rejected as speculative and unsubstantiated as the jury apparently saw otherwise. *See* Defs. Mem. at 9-12.

24

jury reasonably believed that Sergeant Mercado had the duty and the authority to direct Belardo to conduct the pursuit in a manner that was not reckless and he failed to do so.

Moreover, Defendants' questioning of Rafique's credibility on the issue of how fast the car was going (as opposed to anything else) now, in support of their Rule 59 motion, is misplaced. Their reliance on Rafique's testimony in summation was a judicial admission from which they cannot retreat now. *United States v. Duffy*, 188 F. Supp. 2d 281, 285 (E.D.N.Y. 2002); *see also Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 358 n.7 (3rd Cir. 1999) (attorney's unambiguous statements of fact made during opening or closing arguments can constitute judicial admissions under FRE 801(d)(2)); *United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir. 1991) (same). The verdict was supported by ample evidence; a new trial would be a waste of scarce judicial resources.

## CONCLUSION

For these reasons, Plaintiff respectfully requests the Court deny Defendants' Motions pursuant to Rule 50 and Rule in their entirety, with prejudice.

Dated: Glendale, New York
         August 17, 2017

Respectfully submitted,

_____
DANIELA NANAU
GREGORY ANTOLLINO

ATTORNEYS FOR PLAINTIFF

25