UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- X

LERIN PIERCE,

Plaintiff,

- against -

THE CITY OF NEW YORK, POLICE OFFICER TAQI, POLICE OFFICER BELARDO, and POLICE SERGEANT MERCADO,

Defendants.

---------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

16-cv-5703 (BMC)

**COGAN**, District Judge.

This § 1983 excessive-force action arose out of an incident that took place on Labor Day, 2015. A RadioShack manager accused plaintiff of trying to steal merchandise. When police approached plaintiff and the manager outside the store on the sidewalk of Flatbush Avenue and asked to search plaintiff's bag, plaintiff, who at the time was a recreations manager and former personal trainer, took off running down the sidewalk. An officer gave chase on foot, and a nearby police car joined the pursuit, proceeding south on Flatbush Avenue to try to get ahead of plaintiff. Plaintiff then darted out into the middle of Flatbush Avenue – the busiest street in Downtown Brooklyn – and made contact with the near corner of the police car, falling to the ground. He stood up immediately and was arrested. Plaintiff was taken to the hospital where he reported pain in his right knee and right hand; he was prescribed Tylenol and promptly released to police custody. Pictures of him taken shortly after the incident showed, at most, a few scrapes on his face and right knee.

Based on these undisputed facts, a jury somehow found that the police officer who was driving the car intentionally or with reckless indifference used excessive force on plaintiff by causing or allowing contact with the police car. The jury also found that the sergeant sitting in the front seat was liable for failing to intervene, presumably by not preventing the impact.

Juries usually get it right, or at least decide cases within a zone of reason, but this one did not. There was no credible evidence that the police-officer driver intended contact with plaintiff at all. And there was no evidence that the sergeant could have taken any action to prevent contact between plaintiff and the vehicle. I therefore grant the sergeant's motion for judgment as a matter of law on the failure-to-intervene claim against him, and order a new trial as to the police-officer driver on the excessive-force claim, because that verdict was against the clear weight of the evidence.

**BACKGROUND**

Plaintiff Lerin Piece filed this action on October 12, 2016, against the City of New York and certain individual police officers, alleging, *inter alia*, excessive force by the officers who effected his arrest on September 1, 2014. After extensive proceedings before this Court, including numerous discovery disputes and motion practice, the case advanced to trial the week of June 12, 2017.

At trial, the factual narrative developed as follows: plaintiff was accused of stealing a cellphone or phone charger by the manager of a RadioShack on Flatbush Avenue in downtown Brooklyn. Plaintiff denied stealing and left the store. Officer Zeeshan Taqi, an NYPD officer who was patrolling in the area, responded to a call about the alleged RadioShack incident. Officer Taqi encountered plaintiff on the sidewalk next to Flatbush Avenue and began discussing what happened with plaintiff and the RadioShack manager. While this conversation was

happening, Sergeant Ivan Mercado and Officer Sonia Belardo, two more NYPD officers who had been alerted to the incident, arrived in a marked police car. Officer Belardo was the driver that day. In the backseat of their squad car was Ahsin Rafique, a RadioShack employee who had contacted the police about the incident with plaintiff.

At some point during their conversation, Officer Taqi told plaintiff he was going to be handcuffed. At trial, Officer Taqi testified that one of the reasons he wanted to handcuff plaintiff was because the RadioShack manager had told him that plaintiff had a knife in his pocket.

Plaintiff, upon being told he was going to be handcuffed, took off. He ran south on the sidewalk on the west side of Flatbush Avenue. Plaintiff testified that he was running "more fast than I would normally." Officer Taqi ran after him on foot; Sergeant Mercado and Officer Belardo followed in their squad car, with the lights and sirens on. Plaintiff testified that he heard the sirens from Officer Belardo's police car and that he recognized a second, tan vehicle pursuing him with lights and sirens as an unmarked police car.

When plaintiff was about midway down the block between Lafayette Avenue and State Street, plaintiff turned and tried to run across Flatbush Avenue, and was struck by the passenger-side front bumper of Officer Belardo's police car. Plaintiff testified that the car struck his left side. Although not relevant for this motion (because the jury found found his testimony on this point not credible), plaintiff alleged that the officers who arrested him after he collided with the car used excessive force, specifically, that they kicked him and punched him in the face. Plaintiff testified that he blacked out, saw a white light, and heard ringing noises because of these blows.

When plaintiff testified about the collision at trial, he said that he "didn't see the car when [he] was struck." Plaintiff testified on cross-examination that he could not tell how fast the police car was going, but that he saw it accelerate to hit him.

Rafique, the RadioShack employee who was in the back seat of Officer Belardo's police car during the chase, estimated that the car was going approximately 40-45 mph from the time the officers got into it until the car stopped. Rafique testified that plaintiff "was trying to cross the street, it sort of looked like he was stumbling, and that's when he ran directly in front of the car." Contrary to plaintiff's testimony, Rafique testified that when plaintiff ran in front of the car, Officer Belardo braked to avoid hitting him; he clarified that car didn't speed up and didn't turn to hit plaintiff. According to Rafique, Officer Belardo said "oh sh**" when plaintiff ran out in the street, but did not say anything else during the drive, and Sergeant Mercado did not say anything to her.

Sergeant Mercado testified that traffic prevented the police car from going more than 20-25 mph while pursuing plaintiff, and that, because Officer Belardo braked once plaintiff ran into the road, the car was going "very slow" when it hit plaintiff.

Officer Belardo testified that while they were pursuing plaintiff in the squad car, traffic prevented her from driving any faster than plaintiff and Officer Taqi were running. She testified that she saw plaintiff run out across Flatbush Avenue, where an unmarked police car had stopped in front him, and that, in response, plaintiff did "a little zigzag" to avoid the officers exiting the unmarked vehicle and ran toward her car. Officer Belardo testified that as soon as she realized that she and plaintiff were going to collide she "slammed on [the] brakes," and that because she braked so hard, the car was stopped when plaintiff hit it. Officer Belardo said the only reason plaintiff hit her car was because he did not see her.

After he was arrested, plaintiff was taken to Brooklyn Hospital. According to the hospital report, plaintiff said he was "clipped on his left side by a car," and complained of pain in his right knee and hand. The report stated that plaintiff said he was dizzy when he was first admitted, but during his evaluation he said that he was not dizzy and that he did not lose consciousness or hit his head during the incident. The hospital report noted that plaintiff's back was not tender, and did not mention plaintiff complaining of back pain. Plaintiff was discharged from the hospital with a prescription for Tylenol; he was told to follow up with his primary doctor.

Pictures taken shortly after the incident by both the police and by plaintiff's then-girlfriend show minor abrasions on plaintiff's right knee and one or two scrapes on the side of his face. At trial, plaintiff admitted that he emailed his doctor the day after the collision, asking for a refill of his asthma medication and pain medication he had been prescribed for a weight-lifting injury, but did not mention to his doctor being hit by a car or being punched and blacking out. Plaintiff testified that he did not see his primary doctor until about a month after the incident.

Plaintiff testified that he suffered physical and emotional injuries as a result of the collision and his subsequent arrest. Plaintiff testified that his lip was swollen from being punched in the face and rubbed into the asphalt during his arrest. He testified that he developed a sore on his mouth which had to be lanced and which required stitches and weeks to heal properly. Plaintiff testified that he saw a physical therapist and a chiropractor because of his back pain, although he testified and affirmed on cross-examination that he had injured his back while lifting weights on August 28, 2014, three days before his collision with the police car. He also testified that he became depressed after this incident, and began seeing a social worker once

or twice per week for help dealing with his negative emotions. Plaintiff also testified that he saw a psychiatrist.

Dr. Richard Sternberg, a chiropractor who treated plaintiff from November 2015 through August 2016, testified that he treated plaintiff for back pain some 37 times during that period. Vanessa Trujillo, a social worker, confirmed that plaintiff had been seeing her for talk therapy once or twice per week since June 2015 for help managing his emotions. She testified that she had diagnosed plaintiff with major-depressive disorder and post-traumatic stress disorder. She also testified that she had referred plaintiff to a psychiatrist.

At the close of evidence at trial, defendants moved for judgment as a matter of law on plaintiff's damages claim, arguing that plaintiff had not produced any evidence that his alleged injuries were caused by defendants. The Court denied this motion.

The jury found that Officer Taqi did not use excessive force or fail to intervene, that Sergeant Mercado did not use excessive force, and that Officer Belardo did not fail to intervene. But the jury found that Officer Belardo used excessive force in effecting plaintiff's arrest, and that Sergeant Mercado was liable for failing to intervene in the use of excessive force. The jury awarded plaintiff $3,000 in compensatory damages ($2,000 from Officer Belardo and $1,000 from Sergeant Mercado), and $12,000 in punitive damages (divided evenly between the two defendants).

After the verdict, both defendants renewed their motion for judgment as a matter of law; they also moved for a new trial.

## DISCUSSION

### I. Legal Principles

#### *A. Rule 50 Motion for Judgment as a Matter of Law*

Rule 50 permits the district court to enter judgment as a matter of law for a party if the court finds that no reasonable jury would have a legally sufficient evidentiary basis to find for the non-moving party on that issue. Fed. R. Civ. P. 50(a)(1). Under this strict standard, the court may only grant judgment as a matter of law if "it can conclude that, with credibility assessments made against the moving party and all inferences drawn against the moving party, a reasonable juror would have been *compelled* to accept the view of the moving party." Zellner v. Summerlin, 494 F.3d 344, 370-71 (2d Cir. 2007) (quoting Piesco v. Koch, 12 F.3d 332, 343 (2d Cir.1993)). "Th[e] burden is 'particularly heavy' where, as here, 'the jury has deliberated in the case and actually returned its verdict' in favor of the non-movant." Cash v. Cty. of Erie, 654 F.3d 324, 333 (2d Cir. 2011) (quoting Cross v. N.Y.C. Transit Auth., 417 F.3d 241, 248 (2d Cir. 2005)).

The court may only grant judgment as a matter of law if, after viewing the evidence in this light, the court concludes that there is such a complete lack of evidence supporting the jury's verdict "that the jury's findings could only have been the result of sheer surmise and conjecture," or that the evidence in favor of the moving party is "so overwhelming that reasonable and fair minded persons could not arrive at a verdict against [the non-moving party]." Cash, 654 F.3d at 333.

Under Rule 50(a), a party can move, before the case is submitted to the jury, for judgment as a matter of law on any issue on the ground that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [opposing] party on that issue." Fed. R. Civ. P. 50(a). If that motion is denied and the jury returns a verdict for the moving party's opponent, the moving party can renew its motion under Rule 50(b). On a Rule 50(b) motion, the Court must

draw all reasonable inferences in favor of the non-moving party, but it cannot find facts that are inconsistent with the jury's findings. Zellner, 494 F.3d at 371.

### *B. Rule 59 Motion for a New Trial*

Rule 59 permits a court to grant a new trial after a jury trial for "any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A new trial is appropriate when the verdict is against the clear weight of the evidence, that is, if the verdict is seriously erroneous or a miscarriage of justice. See Farrior v. Waterford Bd. of Educ., 277 F.3d 633, 634 (2d Cir. 2002). A new trial may also be appropriate where counsel's conduct during argument causes prejudice to the opposing party and unfairly influences the jury's verdict. Pappas v. Middle Earth Condo. Ass'n, 963 F.2d 534, 540 (2d Cir. 1992).

In contrast with a motion for judgment as a matter of law, a court considering a motion for a new trial based on the weight of the evidence is permitted to assess the evidence and the witnesses' credibility independently, without viewing them in either party's favor. Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 418 (2d Cir. 2012). A district court must proceed with "with caution and great restraint" when asked to review a jury verdict based on witnesses' credibility; the court should not substitute its own assessment of witnesses' credibility simply because the court disagrees with the jury. Id. But ultimately, the court has discretion to grant a new trial if, in the court's independent judgment, the verdict is seriously erroneous or a miscarriage of justice. Farrior, 277 F.3d at 634-35.

## II. Analysis

Plaintiff brought excessive-force and failure-to-intervene claims based on two separate contacts with the police: first, plaintiff's undisputed impact with Officer Belardo's police car

when he darted across Flatbush Avenue in the middle of the block, and second, plaintiff's disputed claim that the officers[1] punched and kicked him in the head while arresting him. Because the jury found Officer Taqi and Sergeant Mercado did not use excessive force, only the first contact – the collision with the police car – is implicated by the current motions.

**A. Motion for Judgment as a Matter of Law Pursuant to Rule 50**

As to Sergeant Mercado, defendants argue that there was no evidence to support the verdict against him for failure to intervene. To prove such a claim, plaintiff must show that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988)).

Specifically, defendants argue that there was no evidence Sergeant Mercado had a realistic opportunity to intervene to stop the car before it hit plaintiff, and plaintiff's constitutional rights were not violated, so a reasonable person in Sergeant Mercado's shoes would not think that they were. Plaintiff argues that neither officer is entitled to judgment as a matter of law because there was sufficient evidence for the jury to find excessive force and failure to intervene; plaintiff also argues that defendants waived their qualified-immunity argument by failing to raise it in their oral Rule 50(a) motion.

Even viewing the evidence in plaintiff's favor, it was grossly insufficient to support the verdict against Sergeant Mercado. I therefore grant his motion for judgment as a matter of law

[1] Plaintiff did not identify which officers allegedly punched and kicked him, but at trial he disclaimed any argument that Officer Belardo did so, so the excessive-force claim must have been against Officer Taqi and Sergeant Mercado. Officer Taqi testified at trial that he was the officer who handcuffed plaintiff.

on the failure-to-intervene claim against him. But viewing the evidence in plaintiff's favor, including plaintiff's testimony that Officer Belardo accelerated to hit him with the police car, means Officer Belardo is not entitled to judgment as a matter of law. For the same reason, Officer Belardo is not entitled to qualified immunity.

There is simply no legally sufficient evidentiary basis to find that Sergeant Mercado failed to intervene. Plaintiffs did not present any evidence that Sergeant Mercado had a realistic opportunity to intervene from the passenger seat to stop the collision, and common sense suggests he would not have been able to. An officer's presence on the scene is not enough to establish liability; the officer must have had a realistic opportunity to intercede. See O'Neill, 839 F.2d at 11. By all accounts, plaintiff, who himself testified that he was an athlete and was running faster than normal, cut across the street in the middle of the block. Even assuming plaintiff's version of events, in which Officer Belardo accelerated to hit him, the acceleration would have occurred immediately before the car struck him, leaving Sergeant Mercado no time to intervene. Nor was there any evidence that Sergeant Mercado knew that Officer Belardo intended to use the vehicle as a means of force or that he told her to do so. The only testimony presented was that Sergeant Mercado did not say anything to Officer Belardo after they got in the car to pursue plaintiff.

Plaintiff argues that Sergeant Mercado could have "intervened" by telling Officer Belardo not to chase plaintiff in the police car in the first place, or by telling her to slow down. The former argument is part of a broader narrative that plaintiff's counsel spun at trial that the police had no right to handcuff plaintiff or that because the police did not tell plaintiff that he was not free to go, they had no right to pursue him once he fled.

As the Court reiterated at least three times during trial, there was no false-arrest claim in this case because there was clearly probable cause – a store employee identified plaintiff to the police as a thief with a knife – and the police were entitled to detain plaintiff to question him about the allegations. Plaintiff himself conceded the absence of a valid false-arrest claim and dropped the claim before trial. There was nothing unlawful about the officers pursuing plaintiff after he fled when they said they were going to handcuff him, and therefore no need for Sergeant Mercado to intervene to stop the lawful pursuit. See Mandola v. Cty. of Nassau, 222 F. Supp. 3d 203, 221 (E.D.N.Y. 2016) (individual defendants not obligated to intervene in a lawful search). The police were not obligated to limit themselves to a foot chase which plaintiff, a former personal trainer, would have likely won; they had every right to use a police car in the effort to arrest him. That the police were told plaintiff was carrying a knife further explains why they pursued him vigorously. The police are not obligated to let an alleged armed thief, even an alleged armed petty thief, outrun them.

Despite this, plaintiff's counsel's opening and closing statements were punctuated by the refrain that plaintiff was not under arrest, or that he thought he wasn't under arrest, or that no one told plaintiff he was not free to leave. See, e.g., Tr. 493 ("And that police officer said he wasn't under arrest. So it doesn't matter if he ran, he walked, or whatever. He was not under arrest . . . . . [he] wasn't under arrest and wasn't told he had to stay."). The jury may have been confused by plaintiff's counsel's strenuous arguments that plaintiff was not under arrest when he fled, but these arguments are not a legally sufficient evidentiary ground on which the jury could have reached its conclusion.

Sergeant Mercado is entitled to judgment as a matter of law because, even assuming that plaintiff's constitutional rights were violated (although I am confident they were not), there was

no evidence presented that Sergeant Mercado had a realistic opportunity to intervene and prevent the harm. He obviously could not access the brakes himself and plaintiff's mid-block dash into a busy thoroughfare left no time for any oral direction. That's even assuming that he noticed plaintiff sprinting out in front of the car any earlier than did Officer Belardo, of which there is no evidence.

As to Officer Belardo, judgment as a matter of law is inappropriate because, viewing the evidence in the light most favorable to plaintiff – specifically, plaintiff's testimony that the car Officer Belardo was driving sped up to hit him – there was at least some evidence that Officer Belardo intentionally struck plaintiff with the police car. And although plaintiff's counsel disclaimed any argument about Officer Belardo intentionally striking plaintiff in his closing (limiting his arguments to recklessness), those arguments are not evidence and the jury could have disregarded them and taken plaintiff's own testimony at face value. For the same reason, when the facts are viewed in the light most favorable to plaintiff, Officer Belardo is not entitled to qualified immunity as a matter of law.

**B. Motion for a New Trial Pursuant to Rule 59**

But both defendants also moved for a new trial on the ground that the verdicts were against the clear weight of the evidence. The motion is moot as to Sergeant Mercado in light of the Court's decision to grant him judgment as a matter of law on the failure-to-intervene claim. But as to Officer Belardo, I am thoroughly convinced that a new trial is necessary because the verdict was against the clear weight of the evidence. A manifest injustice has been delivered upon a police officer who was simply doing her job.

It was absurd for the jury to credit the testimony that the police car was going 40-45 mph at the time of impact – plaintiff would be dead, or at least thrown many feet from the vehicle and

grievously injured if he were hit at such a speed. But plaintiff testified that he got up on his own "a couple of seconds" after he was hit.

The hospital report confirms that plaintiff's injuries were not consistent with a collision with a car going 40-45 mph. According to the report, plaintiff said that he was "clipped on his left side by a car," and complained only of pain in his right knee and right hand. Plaintiff initially complained about feeling dizzy, but the report states that during his evaluation he said he was no longer dizzy and that he did not lose consciousness or hit his head during the incident. Plaintiff was discharged from the hospital with only a prescription for Tylenol.

Pictures taken of plaintiff shortly after the incident by the police and by plaintiff's then-girlfriend show minor cuts and scrapes on plaintiff's right knee and one, possibly two small scrapes on his face. Plaintiff admitted that he emailed his doctor the day after this incident to request a refill of his asthma medication and the pain medication prescribed for his August 28, 2014 weight-lifting injury, but did not mention in that email that he was hit by a car, punched repeatedly, and blacked out repeatedly. Although plaintiff saw his doctor the day after his August 28 weight-lifting injury, he didn't see his doctor for nearly a month after collision at issue here.

Plaintiff's lack of injuries – as evidenced by the medical report and photographs taken shortly after the incident, and as suggested by his delay in seeing his doctor – explains why the jury did not credit his claim that Officers Mercado and Taqi beat him while arresting him. The jury found both officers not liable for excessive force, and found Officer Taqi not liable for failing to intervene (there was no claim that Officer Taqi was involved in any use of force with the car).

And plaintiff's version of the events on the whole was patently incredible. He testified that he did not see the car when he was struck, but somehow saw it "spe[e]d up to hit him" before he was struck. He testified that his "head was bashed into the road" and that he was "punched in [the] face" and "hit in [the] head" many times and that he blacked out "repeatedly" and "saw white light." Plaintiff did not report any of this when he went to the hospital, and affirmatively stated that he did not lose consciousness and did not hit his head. Nor did he report any of it to his doctor when plaintiff emailed him the next day. The photographs taken shortly after the incident also did not show the kind of injuries one might expect from the serious attack plaintiff alleged.

I cannot credit plaintiff's allegation that Officer Belardo accelerated and intentionally hit him or that she acted with conscious disregard for the known consequences in permitting the vehicle to strike plaintiff at the speed plaintiff claims she did. The clear weight of the evidence is that Officer Belardo attempted to brake when she saw plaintiff in the street and did not intend to hit him at all. The worst that anyone could say about Officer Belardo's conduct is that she made a mistake; perhaps she should have seen him sooner. But even a common-law negligence claim would be a stretch on this record where the plaintiff darted out into the middle of a busy street. The evidence against plaintiff's testimony simply overwhelms the evidence in favor of a finding that Officer Belardo caused an impact with her car not only negligently, but intentionally or recklessly.

"[T]here comes a point where this Court should not be ignorant as judges of what we know as men." Watts v. Indiana, 338 U.S. 49, 52 (1949) (Frankfurter, J.). Plaintiff's own testimony and the evidence of his injuries simply could not support the conclusion that Officer Belardo intentionally or recklessly caused a contact with the plaintiff, or that the police car was

going anywhere near 40-45 mph when it collided with him; the jury's verdict against Officer Belardo is therefore against the clear weight of the evidence.

My conclusion that a new trial is necessary is buttressed by the significant possibility that plaintiff's counsel's presentation confused the issues for the jury. In his opening statement, plaintiff's counsel emphasized that the officers intentionally hit plaintiff with the car to stop him from escaping; he argued that "[the officers] went into the other lane and they hit him" and "they chased him with a car, *hit him with a car in another lane just so he wouldn't get away*." (Emphasis added.) The only testimony presented to support this version was plaintiff's own testimony, which the jury could have chosen to credit. But then in his closing argument, plaintiff's counsel expressly and repeatedly disclaimed any argument that Officer Belardo intended to hit plaintiff. Plaintiff's counsel argued instead that Officer Belardo's actions were reckless. Of course, accelerating toward a pedestrian in the street, as plaintiff claimed that she did, would not be reckless, it would be an intentional act, so plaintiff's testimony did not support a finding of recklessness.

And there was no other evidence presented to support a finding that Officer Belardo was reckless – no examination about the possible consequences of traveling at certain speeds, no testimony about standard practices for pursuing a suspect evading arrest on foot. And defendants had no reason to elicit testimony about or submit evidence of non-recklessness because plaintiff did not introduce any evidence to support a recklessness theory, or even argue it, except for a single question to Officer Belardo, asking if she knew that she was not supposed to drive recklessly.

Several instances where the jury may have been misdirected by plaintiff's counsel during trial – showing the jury portions of a video exhibit and a photo exhibit the Court had previously

excluded, or using Scotch tape and pieces of paper to "redact" a video transcript – could be chalked up to lack of preparation. But others, such as sending an excluded exhibit on the backside of an admitted exhibit in with the jury for deliberations, smacked of an underhandedness reflected in plaintiff's counsel's relying solely on a recklessness argument in closing, without having presented or elicited a scrap of evidence on recklessness. To the extent these aspects of plaintiff's counsel's presentation improperly influenced the jury, a new trial will cure those defects.

It is hard to overstate the disparities between allegations in this case as stated to the jury in opening and closing arguments and the evidence actually presented at trial. The clear weight of the evidence is against the jury's verdict finding Officer Belardo used excessive force against plaintiff. I am particularly convinced that a new trial is necessary in light of plaintiff's counsel's presentation to the jury. The Court may grant relief under Rule 59 for reasons independent of the evidence, even in situations where the evidence presented at trial was sufficient to support the jury's verdict. See, e.g., Nimely v. City of N.Y., 414 F.3d 381, 392 (2d Cir. 2005) (granting a new trial based on erroneously admitted expert testimony). Although the likely effect of counsel's presentation on the jury in this case may not be sufficient on its own to justify a new trial, it reinforces my conclusion that the jury reached a seriously erroneous result as to Officer Belardo, and that a new trial is warranted.

## CONCLUSION

Accordingly, defendants' motion for judgment as a matter of law is granted as to Sergeant Mercado and denied as to Officer Belardo, and their motion for a new trial [136] is granted as to Officer Belardo. Plaintiff's motion for attorneys' fees [128] is denied as moot.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
December 11, 2017