**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**LERIN PIERCE,**                                          :

            **Plaintiff,**                          :

    **- v. -**                                        :          **Case No. 16-CV-5703-BMC**

**CITY OF NEW YORK, IVAN MERCADO,**        :
**SONIA BELLARDO, and, ZEESHAN TAQI,**
                                      :

            **Defendants.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF'S MEMORANDUM OF LAW FOR CERTIFICATION OF**
**INTERLOCUTIORY APPEAL UNDER RULE 54(B) AND 28 U.S.C. § 1292(B)**

GREGORY ANTOLLINO, ESQ.
LAW OFFICE OF DANIELA NANAU, P.C.

ATTORNEYS FOR PLAINTIFF

January 16, 2018

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 6

    I.   The Court Should Enter Judgement for Defendants Taqi and Mercado under Rule 54(b). 6

    II.   The Court Should Certify the New Trial for Interlocutory Appeal under 28 U.S.C. §

    1292(b). ........................................................................................................... 11

        A.   Seventh Amendment Issue ........................................................................... 12

        B.   There Are Grounds for Disagreement that the Other Points Noted in Your Decision

    Are a Legitimate Basis for Judicial Disagreement and Not Grounds for a New Trial. ........ 12

        1.   Statements by Counsel in Opening and Closing ........................................ 12

        2.   Credibility Issues ...................................................................................... 15

        3.   Reasonable Jurists Could Find the Kerfuffles in Presentation of Evidence Had No
Effect on the Jury, Especially Given the Curative Instructions. ........................................... 16

    III.   If the Retrial Must Take Place, Let's Get to It. ............................................. 18

    CONCLUSION ..................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Barboza v. Vill. of Liberty*, No. 13-CV-4067 (CS), 2016 WL 8653502 (S.D.N.Y. Jan. 21, 2016), *aff'd*, 676 F. App'x 9 (2d Cir. 2017) ................................................................ 6

*Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1 (1980) ........................................ 7

*Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158 (2d Cir.2005) ............... 6

*Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627 (2d Cir. 1991)................ 6, 7, 11

*Linde v. Arab Bank, PLC*, 97 F. Supp. 3d 287 (E.D.N.Y. 2015) .................................. 11

*Matthews v. CTI Container Transp. Int'l, Inc.*, 871 F.2d 270 (2d Cir. 1989) ............. 15

*Pappas v. Middle Earth Condominium Ass'n,* 963 F.2d 534 (2d Cir.1992) ................. 14

*Ricciuti v. N.Y.C. Transit Auth.,* 70 F. Supp. 2d 300 (S.D.N.Y. 1999).......................... 15

*River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414 (2d Cir. 1989)................ 8

*Richardson v. Marsh*, 481 U.S. 200 (1987) ................................................................ 18

*Swarna v. Al-Awadi*, No. 06 CIV. 4880 (PKC), 2009 WL 2190192, at *3 (S.D.N.Y. July 22, 2009), *aff'd*, 622 F.3d 123 (2d Cir. 2010) ................................................ 6, 7, 10

*Transportation Workers Union of Am., Local 100 v. N.Y. City Trans. Auth.*, 505 F.3d 226 (2d Cir. 2007)).......................................................................................... 6

*United States v. Kusek*, 844 F.2d 942 (2d Cir. 1988).................................................. 18

*Watts v. Indiana*, 338 U.S. 49 (1949) ........................................................................ 19

*Wiercinski v. Mangia 57, Inc.*, 33 F. Supp. 3d 118  (E.D.N.Y. 2014)......................... 16

*Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106 (2d Cir. 2015) ...................................... 16

*Zarda v. Altitude Express*, 855 F.3d 76 (2d Cir. 2017).............................................. 14

**Rules and Statutes**

28 U.S.C. § 1292(b) ..................................................................................... 4, 5, 10, 11

Federal Rule of Civil Procedure 50 .................................................................................. passim

Federal Rule of Civil Procedure 54(b) .............................................................................. 3, 6

New York Criminal Procedure Law N.Y. Crim. Proc. Law § 140.50 ............................... 2

## Constitutional Provisions

Fifth Amendment ................................................................................................................ 16

Seventh Amendment ................................................................................................. 4, 5, 10, 11

## Other Authorities

Frederick Block, Disrobed, 2012 ....................................................................................... 2

**PRELIMINARY STATEMENT**

A trial against the police resulted in a statistically uncommon verdict for the plaintiff, modest but not nominal, though one defendant was found not liable. This came after the Court denied defendant's summary judgment as to all contested issues, allowed the case to go to the jury at the 50(a) motion and even instructed the jury, "The fact that I'm instructing you on the law of damages doesn't mean that I have any opinion as to whether plaintiff has proven any or all of his claims. I have no opinion. It's entirely for you to decide." Tr. at 544. In bringing this motion, we do not intend to convince you to reinstate the verdict, but to conserve resources and allow an interlocutory appeal.[1]

The jury – which my notes support – had 6 members with college degrees, at least six of whom were gainfully employed. One worked as a payroll manager at a major international law firm, one was a former peace officer, and one was a Hemingway fan who worked as a manager at a non-profit corporation in Manhattan. These members of the community came to an unusual verdict: a clear line in their findings, modest, but not nominal damages. They also awarded punitive damages because they wanted to send a message. They very carefully considered plaintiff's claim that the police had over-reacted to a matter of modest importance and decided that even if he ran, they went too far in response. The modesty of the verdict took plaintiff's actions into account.

The Court pushed this matter to trial, sanctioning me early on for behavior you thought was dilatory. I was upset by that, and I haven't been sanctioned ever before (or since). But I have

---

[1] To the extent that any procedural facts at trial or before this litigation are concerned, the transcript controls. Where I, Gregory Antollino, have provided procedural facts about the litigation, I declare that those facts are true to the best of my memory and under the penalties of perjury.  /s/ GA.

decided I won't appeal the sanction because, even though I disagree with the basis for the ruling, it got me off my duff, and I put my heart into this case, which I had always recognized was close factually. That is what you wanted me to do; I tried to meet your high standards. I fell short at times, but it was not for lack of trying. The Court wanted this case to go to trial. My interpretation of your body language at the announcement of the verdict was that you were surprised. But I have been surprised by verdicts in the past, as has every trial lawyer. Judge Block of this Court used to work in a capacity similar to mine and wrote in his memoir, Disrobed, 2012, pp.151 that he "lost [his] share of cases. One in particular still haunts me." The main lesson I leave with in this case is to clarify the extent of an expert's testimony if he or she is a treating physician. That was my strategic choice, in consultation with my client, and you made a discretionary decision that the experts could not testify as to causation. I do not intend to appeal that decision either because the standard of review is generous, and it would at best result in a new trial in a close case. I don't want that.

Nevertheless, despite making that strategic mistake, I believe this plaintiff should be allowed to appeal your decision without a second trial. Lerin Pierce did not hit the jackpot. He won a modest verdict that surprised the Court – though not me – and sent the message that the officers escalated a matter of modest importance into a high-speed chase – at least for New York City. Reasonable people can disagree about this. The police have the right to investigate a claim and detain a citizen, but not for a lengthy period when a complaining witness' testimony is "iffy" in the mind of the supervising officer, as Mercado testified. At some point, a man accused of a crime who tries to reason and cooperate with the police has the right to leave if he is not under arrest. This is codified in New York Criminal Procedure Law N.Y. Crim. Proc. Law § 140.50, a section entitled "Temporary questioning of persons in public places[.]' It is not an endless right or an

undefined one. "An individual to whom a police officer addresses a question has a constitutional right not to respond. He may remain silent or walk or run away. His refusal to answer [a police inquiry] is not a crime." *Uzoukwu v. City of N.Y.,* 805 F.3d 409, 415 (2d Cir. 2015). In this case, plaintiff was not under arrest; no one told he had to stay and engage in further discussion when he Taqi threatened him with handcuffing after a search of his backpack. CPL § 140.50 simply does not allow for carrying someone away in cuffs on – as Mercado agreed, if not Taqi – "iffy' probable cause. Given that plaintiff's bag and person was searched, we think it was reasonable to tell the jury that he was not told he was under arrest or had to stay while "detained." CPL § 140.50 governs.

The Court used the word "somehow" in describing the jury's reasoning, suggesting that it came to its decision "by hook or by crook," (a synonym by thesaurus) rather than by examining the evidence. Yet it allows another trial for one defendant, and dismisses the claims against the other. Somehow, this does not make sense to me at least. I doubt anyone is thrilled about this result, least of all plaintiff. I love trying cases, but think it would be a waste of resources to retry this one, and my guess is that no one involved in this litigation wants to try this case again. Plaintiff thus suggests the Court move toward finality by allowing him an interlocutory appeal as the rules allow.

First, we ask the Court enter immediate judgment under Federal Rule of Civil Procedure 54(b) against Defendant Mercado.[2] The Court granted Defendants' Rule 50(b) motion as to the claim against him, striking the jury's verdict of liability for failure-to-intervene against him, and finding there was no legally sufficient evidentiary basis for that claim. Plaintiff disagrees and would like to appeal. Entering judgment in Mercado's favor would allow that now, before any

---

[2]      We do not intend to appeal the jury's finding as to Taqi, thus judgment may be entered for him as well, but we take no position on the matter if the Court denies the motion as to Mercado.

second trial. Granting Plaintiff's Motion as to Mercado would also clarify his role in this litigation (as a party, or merely a witness) as a matter of law. However, the judicial economy gleaned from granting the Rule 54(b) Motion will best be realized if the Court also certifies an appeal under 28 U.S.C. § 1292(b) on one or more issues to be explained below as to the grant of a new trial as to Belardo. This certification must, of course, be accepted by the Second Circuit as well, but we believe the Court's finding risks violation of plaintiff's right under the Seventh Amendment of the Constitution as we explain below.

The Circuit will agree if this would be in the interest of judicial economy. If the Court were to empanel a second jury, which found Mercado not liable for excessive force, then plaintiff could thereafter appeal the 50(b) finding as to Mercado. However, the Court of Appeals would be faced with the conundrum that a second jury had made a finding that revisits the finding against Mercado, albeit indirectly. Failure to intervene– at least in this case – is a derivative claim. We have no theory to support a finding of failure to intervene against Taqi or against anyone else as to Taqi. I admitted this, in part in my summation: "And I'm being honest with you, in saying you should check no as to Taqi, unless you find as a jury there was something that I missed. And I can make a mistake, but I don't know how he could have done anything since he was not in the car." Tr. 509.

A jury found for plaintiff on the claim against Mercado, however the claims are inextricably intertwined as to their facts. A second trial finding in favor of Belardo would risk violating the jury's finding as to Mercado. This cannot be, or should not be. Even if you found Mercado was entitled to judgment as a matter of law, plaintiff has the procedural right of an appeal of that finding. To allow another trial against Belardo would risk taking away the finding as against both Mercado and Belardo and strip plaintiff of his rights of under the Seventh Amendment: no jury can revisit the facts found by a prior jury. If another jury found for Mercado, the Circuit would

4

have to find that you abused your discretion in granting the 59(a) motion before it could reach the question under 50(b), which has a lower standard of review than 59(a). While this is possible, it could well violate plaintiff's Seventh Amendment right to the jury's finding. Plaintiff should have the right to appeal the Mercado finding without the indirect interference by another jury.

It could also send the Circuit's head spinning. These claims are inextricably intertwined, and to allow a single trial against Mercado could confuse the jury as to why Mercado is not also a defendant. It could require the Circuit to decide the derivative claim of failure to intervene without the benefit of a claim of excessive force. While possible, that would be illogical, and a finding for Belardo at a new trial could confound the Circuit as to whether it could reach the failure-to intervene claim. That would cause a Constitutional conundrum: Upholding the 50(b) ruling based on the finding of a second jury. This is but one plaintiff whose jury found for him modestly. The defendants demanded a jury trial as well, and this constitutional right allows us to resolve disputes in an orderly manner.

Allowing these appeals to proceed simultaneously after a full trial will promote judicial economy and further the goal of sound judicial administration embodied in Rule 54(b) and 28 U.S.C. § 1292(b) by enabling the Circuit court to consider related legal *and factual* issues simultaneously. Additionally, requiring that Plaintiff retry his claims only against Defendant Belardo now (without the benefit of a decision on the appeal as to Mercado), will cause unnecessary confusion for the jury, which will have to be instructed that while Mercado is a witness and remains involved in this action, the Court has found him not liable in a prior proceeding. We took this long to respond to the post-trial motion decision in part because of the holidays, but also because the Court's decision puts plaintiff's – and potentially defendants' – rights in such a precarious position. Thinking this through for a long time, we believe the only

answer is an interlocutory appeal. You alone have the right to enter judgement as for Mercado. As for Belardo, it would require both your exercise of discretion – which you alone can withhold, without any recourse on our part - and the Circuit must agree. But there will be an appeal in this case one way or another by one party or another and it should not be piecemeal.

## ARGUMENT

I.     The Court Should Enter Judgement for Defendants Taqi and Mercado under Rule 54(b).

The Court should grant Plaintiff's request for judgment of his claims against Defendants Taqi and Mercado under Federal Rule of Civil Procedure 54(b), which permits a district court to enter judgment before the litigation is finalized where three requirements are met: "(1) There are multiple claims or parties; (2) at least one claim or the rights and liabilities of at least one party has been determined; and (3) there is an express determination that there is no just reason for delay." *See Barboza v. Vill. of Liberty*, No. 13-CV-4067 (CS), 2016 WL 8653502, at *4 (S.D.N.Y. Jan. 21, 2016), *aff'd sub nom.*, 676 F. App'x 9 (2d Cir. 2017) (citing *Transportation Workers Union of Am., Local 100 v. N.Y. City Trans. Auth.*, 505 F.3d 226, 230 (2d Cir. 2007)).

The district court should utilize the power afforded to it under Rule 54(b) when "there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Swarna v. Al-Awadi*, No. 06 CIV. 4880 (PKC), 2009 WL 2190192, at *3 (S.D.N.Y. July 22, 2009), *aff'd,* 622 F.3d 123 (2d Cir. 2010) (quoting *Grand River Enters. Six Nations, Ltd. v. Pryor,* 425 F.3d 158, 164–65 (2d Cir.2005) (internal quotation marks and citation omitted)). For this reason, district courts "making the 'express determination' required under Rule 54(b) . . . should offer a brief, reasoned explanation." *Harrison Svenska AB v. Harris Corp.*, 947 F.2d 627, 629 (2d Cir. 1991).

Here, a reasoned explanation in support of Plaintiff's motion readily presents itself. The first two requirements of the Rule 54(b) are satisfied since Plaintiff has brought claims against multiple parties and his claims against two, Defendants Taqi and Mercado, have been disposed of. *See Swarma v. Al-Awadi*, 2009 WL 2190192, at *2 (finding the first two prongs of the Rule 54(b) satisfied when the party for whom final judgment is sought is "is a separate party facing claims distinct from those asserted against" the other defendants).

Several reasons favor the determination that there is no just reason for delay in the issuance of final judgment against Taqi and Mercado, the third factor. First, in determining whether just reason exists to delay the individual entry of final judgments under Rule 54(b), courts must "assure that application of the Rule effectively preserves the historic federal policy against piecemeal appeals." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980). Given the unique procedural posture of this case, unless Plaintiff's appeals against Mercado and Belardo proceed simultaneously, Belardo's new trial would move forward without any final decision regarding the status of the jury's verdict against Mercado, which is has now been thrown out.  This could result in two re-trials (one for Belardo and one for Mercado) instead of just one more, and a second series of post-trial appeals. *Cf. Harriscom Svenska AB v. Harris Corp.,* 947 F.2d 627, 631 (2d Cir.1991) ("It does not normally advance the interests of sound judicial administration or efficiency to have piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case ....").

Second, as explained in more detail in Point II, it is logical to allow Plaintiff's appeals of the district court's grant of Defendants' Rule 59 motion as to Belardo and its Rule 50(b) motion as to Mercado.  While the legal issues in each appeal are distinct as to standard of review and the evidence sufficient to allow a verdict, they are factually intertwined; as such, they should be

considered by the Second Circuit at the same time. *See Hudson River Sloop Clearwater, Inc. v. Dep't of Navy,* 891 F.2d 414, 418 (2d Cir. 1989) (holding "separate and distinct test" satisfied where the claims on appeal stem from the same general issue but raise legal issues distinct from one another). Here, the claims on appeal relate to the same sequence of events but involve different legal duties and operative facts. To require the Circuit Court to consider whether Belardo engaged in unconstitutionally excessive force when she drove the car that indisputably hit Plaintiff without also examining the jury's finding of Mercado's failure to intervene encourages piecemeal litigation. Further, it is important to keep in mind the purposes and policies behind the distinct and separate claims requirement of Rule 54(b), namely the desire to avoid redundant review of multiple appeals based on the same underlying facts and similar issues of law. *See Curtiss–Wright,* 446 U.S. at 8, 100 S.Ct. at 1465.

Third, the Court's assessment of a Rule 54(b) certification must also consider the equities between or among the parties. *Curtiss-Wright,* 446 U.S. at 8, (quoting *Sears Roebuck,* 351 U.S. at 435, 437, 438). Here, requiring Plaintiff to retry his claims only against Defendant Belardo now (without the benefit of a decision on his appeal as to Mercado), will cause unnecessary confusion for the jury. To counter this prejudice, Plaintiff would have to move *in limine* for the Court to provide instructions explaining Mercado's status as a witness, who was deemed liable in a prior proceeding, but whose status is now uncertain. This would confuse a jury. Even if the Court denied such a motion and allowed a jury to deliberate as to Belardo alone without an instruction as to Mercado, the elephant in the courtroom will be Mercado's role as supervisor. Although he was not behind the wheel, he directed the chase, and contrary to the Court's statement in its order, he was not aware that plaintiff was carrying a knife (for the purpose of cutting a mango). Only Taqi testified about a knife. The complaining witness, Sharoon Samuel, who did not appear at trial, held

8

steadfast that plaintiff was carrying *only* scissors. *See* Transcript of IAB Interview, attached as Exhibit J to Docket 81 (Sharoon: "I told him he had **scissors** on him.") (Emphasis added.) If Mercado were to testify that he was aware of a knife, that would be contrary to his prior testimony, and would require the court to consider opening the door to allow Samuel's statement that he made *after the car hit* into evidence to impeach – or to call him as a witness. This would prejudice the defense now that Taqi is not a party. If Mercado testifies contrary to what he testified to at trial, he would be impeached, at a minimum, and his testimony would be, at a maximum, perjurious.[3]

Although it is undisputed that defendant Belardo drove the car that crashed into Plaintiff, Defendant Mercado was no mere tag-along like the Radio Shack employee, Rafique Afshin, who did not witness plaintiff in the store and had no motive to lie.[4] As the highest-ranking officer on scene, Mercado's admissions during the first trial provided material support for Plaintiff's claims when Mercado testified: (1) that none of the Defendants ever notified Plaintiff of their intent to arrest him, which a highly contested issued of fact at the trial; and (2) that, in his mind, there was only an "iffy" basis on which to base Plaintiff's arrest. Further, when Plaintiff fled, it is undisputed that it was Mercado who ordered Belardo into in the car to chase Pierce, after a search of his belongings. At trial, the only Defendant who testified about "knowledge" of any knife, which could have been a basis for probable cause, was Taqi.

---

[3]     Plaintiff is also prejudiced as far as damages witness Brandon Tilghman now lives in Boston. We can read his transcript, but that is never as good as live testimony for a witness who was excellent in person. Second, we had to make a motion for contempt for a local witness to be released from work to testify. We expect plaintiff's therapist's supervisor to take the same position as before – resistance such as I have never seen in my career.

[4]     The Court noted that Afshin's testimony was incredible because plaintiff would have been killed had Belardo been driving 45 miles per hour; but there was no dispute that she had applied the brakes before hitting plaintiff. Thus, even if her car was moving, it necessarily had to have slowed down before the hit and the car would not have been going 40-45 miles an hour at the last minute.

Equities militate in favor of granting Plaintiff's Motion for reasons relating to Plaintiff's Seventh Amendment rights as well. As noted above if, Belardo were to win her new trial, that could theoretically cast doubt on the jury's factual finding that Mercado failed to intervene before the Circuit court has an opportunity to hear Plaintiff's appeal on that issue. Although the Court struck that claim under Rule 50(b), Plaintiff has the statutory right to appeal the Court's decision that there was no failure to intervene. He can do this after a new trial for Belardo, but if a jury were to find Belardo not liable for excessive use of force, that would be tantamount to a second jury re-examining the facts found by the first jury as to both Defendants Mercado and Belardo because without the excessive use of force, there is no failure to intervene.  In a comparable case, the district court granted the plaintiff's Rule 54(b) because of a similar an unjust hardship on the plaintiff that would result if she was "require[d] . . . to wait for the disposition of [another proceeding] before filing her own appeal." *See Swarma v. Al-Awadi*, 2009 WL 2190192, at \*3-4.

Finally, the U.S. Supreme Court in *Curtiss* explained that certification under Rule 54(b) is appropriate where "appellate resolution of the certified claims would facilitate a settlement of the remainder of the claims." 446 U.S. at 8, fn. 2. In this case, allowing Plaintiff's appeals as to both remaining Defendants proceed to the Second Circuit at the same time might improve the chance of settlement of the whole case with the resolution of major disputed legal issues that prevent settlement now.

Accordingly, the unique circumstances of this case demonstrate there is no just reason to delay entry of judgment against Mercado (and Taqi).

II.     The Court Should Certify the New Trial for Interlocutory Appeal under 28
        U.S.C. § 1292(b).

28 U.S.C. § 1292(b) holds that "order involve[d] a controlling question of law as to which

there is substantial ground for difference of opinion and that an immediate appeal from the order

may materially advance the ultimate termination of the litigation. This Court has previously

opined in denying a § 1292(b) appeal in that "it is a rare exception to the final judgment rule that

generally prohibits piecemeal appeals . . . . [Section 1292(b)] is reserved for those cases where an

intermediate appeal may avoid protracted litigation." *Linde v. Arab Bank, PLC*, 97 F. Supp. 3d

287, 350 (E.D.N.Y. 2015). Unlike in Linde, however, an intermediate appeal *would* avoid

protracted litigation. Indeed, the Second Circuit has held that

> [i]t does not normally advance the interests of sound judicial administration or efficiency
> to have piecemeal appeals that require two (or more) three-judge panels to familiarize
> themselves with a given case, instead of having the trial judge, who sits alone and is
> intimately familiar with the whole case, revisit a portion of the case if he or she has erred
> in part and that portion is overturned following the adjudication of the whole case.

*Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 629 (2d Cir. 1991) ("A certification under

Rule 54(b) should be granted only if there are 'interest[s] of sound judicial administration" and

efficiency to be served . . . or, in the "infrequent harsh case, . . . where there exists 'some danger

of hardship or injustice through delay which would be alleviated by immediate appeal." (Citations

omitted.)

In *Linde*, the Court found no interest in sound judicial administration, but we have

demonstrated above how it may come out here: (1) There is the possibility of multiple trials (and

thus multiple appeals); (2) the Seventh Amendment weighs heavily upon a retrial of a derivative

claim when a second jury could find differently as to the Belardo's liability, and yet we have the

option, under a lower standard of review, of appealing Mercado's lability after a second trial.

A.      Seventh Amendment Issue

A de novo court on appeal could potentially find that you erred in the 50(b) dismissal, yet did not abuse your discretion as to the Rule 59 new trial. If a new trial were to happen before that, it would result in a defense verdict on excessive force, yet how would the Circuit deal with the derivative claim? Apply the finding in the first trial, or the second? The defense would argue the second, and we would argue the first to have access to the lower standard of review, but would it not seem odd that a derivative claim survived review but not the initial claim? That would be like finding no liability for a personal injury claim, but upholding liability for loss of consortium based on the injury. If a new jury found differently as to Belardo, and the Circuit were to decide the 50(b) motion would it do so with the findings of the first trial or the second? This is a significant issue for which there is (1) no caselaw I can find; (2) would consolidate the matter into one appeal and almost certainly avoid a second trial, thereby saving resources; and (3) avoid a Constitutional question. The final of these might seem only hypothetical, but is present.

B.      There Are Grounds for Disagreement that the Other Points Noted in Your Decision Are a Legitimate Basis for Judicial Disagreement and Not Grounds for a New Trial.

1.      Statements by Counsel in Opening and Closing

This was a modest excessive-force case where the standard of recklessness versus intentionality that the defendants proposed and you ruled in their favor *at the end.* As such, as far as the Court finds any reason that my statements in opening versus closing confused the jury, first, plaintiff had no notice that recklessness would be the standard you would apply. That being said – and as you acknowledged, attorney statements are not evidence. Any statements I made in opening,

12

particularly the ones you quoted, could have been susceptible of recklessness, intentionality, or a combination thereof.[5]

Moreover, the jury was not required to believe me – or my client for that matter in his recollection of the event – and it is highly doubtful they were thinking of my opening statement after closings, your instructions – which, if memory serves you sent to the jury – and your post-summation instructions which you offered sua sponte after my summation in order to cure, over my objection and without plaintiff's advanced notice, any statement you thought had crossed the line in my summation. I did not ask for corrective relief because I thought it would call further attention to my closing; I wanted the jury to deliberate. On the other hand, the City did not object to your instruction and, indeed, proposed them against your initial inclination to instruct based on objective reasonability. Reasonable jurists could disagree as to the fairness of ordering a new trial based on a statement in opening, susceptible to differing interpretations, that the defense proposed

---

[5]     Indeed, in my opening, I specifically noted to the jury "Now, I want to talk to you about the idea of suing the police. Okay. We understand that not all cops are bad and we don't believe that these police officers are all bad and we also know they have stressful jobs and they probably are not given enough services to deal with the stress of that job." Tr. 28. I also noted that there might be some dispute about how the collision occurred: "The carrying out of the arrest is what we are talking about and there was a 15-minute discussion until  . . . my client panicked and he ran. He was not under arrest, but he panicked and he ran, and he ran down Fulton to Flatbush and the police officer's response to it was to put out an APB. Officer Taqi went on foot and Officers Mercado and Belardo went in this cruiser with Ace, who saw the whole thing, because he couldn't get out of the car because it's automatically locked.  . . . . We're not saying they were wrong for the arrest. We are not saying Lerin was right in running, but how the arrest was carried out. There were two cars that chased Lerin down Flatbush Avenue. He made a turn from Fulton on to Flatbush and two of them were chasing him. At one point, he crossed the street and the two cars pursuing this man for a $195 Mophie phone charger that was in Sharoon's hand had their sirens on. He ran across the street. They went into the other lane and they hit him. **And there might be some dispute as to what exactly happened when they hit him.**" Tr. 32-33 (Emphasis added.) At that point in the trial, recklessness was not a charge that had been agreed to or ruled upon, and, in any case, there is nothing in this statement indicating that it speaks *necessarily* to intentionality. It speaks to the police officers' actions, not their state of mind, and acknowledges that the testimony might conflict.

<u>after evidence was over</u>. Typically, the charge is to counsel known before counsel can be faulted for merely arguing something inconsistent with the charge.

*Pappas v. Middle Earth Condominium Ass'n,* 963 F.2d 534 (2d Cir.1992) is not to the contrary. In that case, the Circuit reversed because of an inflammatory, discriminatory statement that played to regional bias in summation, not opening:

> COUNSEL:--if they can come up here from New Jersey to Vermont to enjoy what we experience every year, for those of us who are here originally for most of our lives, for most of us who come here for our own reasons, for the rest of the time that we're here, and without a care in the world for their own [*537] safety when they encounter what we, ourselves do not take for granted, and they can injure themselves, and they can sit back and say, "Well, [**6] yes. I'm on long-term disability, and I sit around and I watch golf on TV, but I'd like you to retire me. Retire me now. Pay me now what I would get or what I claim I would get until I work for age 65," regardless of the fact that there are no employees over the mid-40's in the very job for Texaco, which we learned was a very large company . . . . Later in the same summation, counsel for defendant continued, "Would we go to New Jersey and walk on a tugboat without looking where we were going?"

*Id.* at 536-37. There was also an evidentiary error in *Pappas*, to which the Court points to none in this case, other than disbelief of plaintiff and the third-party witness, who had no reason to lie. The standards for attorney statements being a basis for reversal are high. In the recently decided *Zarda v. Altitude Express*, 855 F.3d 76, 83 (2d Cir. 2017) (en banc pending on other grounds) the Second Circuit held that "only if [opposing] counsel's conduct created undue prejudice or passion which played upon the sympathy of the jury." (quoting *Matthews v. CTI Container Transp. Int'l, Inc*., 871 F.2d 270, 278 (2d Cir. 1989)).

Since nothing close to this sort of passion or bias made it to my opening or closing, reasonable jurists could disagree about the Court's decision. Indeed, in my opening, I showed restraint towards the police and though I argued recklessness in summation, since you instructed the jury on intentionality, <u>the jury could have found on that basis</u>. The statement "Oh, shit," uttered by Belardo could be evidence prove either recklessness or intentionality. If a person does

14

something intentionally then later regrets it, "Oh, shit!" can be a statement recognizing one has

gone too far and realizing one's intentions were wrong; on the other hand, it could be a

recognition that one had made an egregious mistake and should have known not to make it. So,

notwithstanding my argument as to recklessness – suggested by the defense – the jury could have

found the hit to be intentional. Or my opening comments could be interpreted as pointing to

recklessness. No standard or state of mind was suggested – and this could be a basis for

disagreement between reasonable jurists that would allow a 1292(b) certification.

>2.      Credibility Issues

Under Rule 59, a "trial judge should be most inclined to disturb a jury's verdict, based

entirely or primarily on credibility, where one conflicting account is so inherently implausible as

to tax credibility or there *is independent evidence* in the trial record clearly demonstrating that to

believe one party's witnesses over the other's would lead to a miscarriage of justice." *Ricciuti v.*

*N.Y.C. Transit Auth.,* 70 F. Supp. 2d 300, 308 (S.D.N.Y. 1999). There is no independent

evidence here, except for the Court's conclusion that had plaintiff been hit by a car going 40-45

miles an hour he would have been killed. This might or might not be true for a man of Mr.

Pierce's age and stature, but the evidence showed that even if she sped up before hitting him,

P.O. Belardo hit the brakes; the two are not inconsistent. Thus, if she were going 45 miles an

hour initially, before she hit plaintiff, the brakes would slow down the speed significantly when

the collision occurred. The jury could have considered that in awarding the modest damages that

it did.

A case decided by a judge of this Court demonstrates that a Court should not invade the

province of the jury's assessment of credibility on factual issues. In *Wiercinski v. Mangia 57, Inc*.,

33 F. Supp. 3d 118, 138 (E.D.N.Y. 2014), the learned Judge Glasser vacated a large punitive

damages award and a $1 liability award under both Rules 50 and 59.  The Circuit reversed him on

the issue of credibility, but it upheld his dismissal of the punitive damages. Essentially, his decision

was left untouched, but the Circuit made a point in publishing a decision overturning the vacatur

of the $1 verdict. The lesson to taken from that case is that even an incredible plaintiff like Mr.

Wiercinski – who took the Fifth Amendment multiple times at trial – is entitled to be worthy of

belief. The Circuit made it clear, nevertheless, that credibility is a province for the jury, not the

Court, even on a rule 59 motion, which Judge Glasser granted in tandem with his Rule 50 decision.

*Id.* at 138, *rev'd in part*, *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106 (2d Cir. 2015).

In keeping with *Wiercinski*, the Second Circuit has held that excessive force claims are

inherently subjective:

> A court's role in considering excessive force claims are to determine whether a jury,
> instructed as to the relevant factors, could reasonably find that the force used was
> excessive. In this case, the majority and the dissent differ on that legal issue. That
> division, not uncommon in cases considering the sufficiency of evidence, leaves the
> factual determination of excessiveness to a jury, whose collective common sense,
> informed by their life experiences, may well exceed that of all the members of this panel.

*Brown v. City of N.Y.*, 798 F.3d 94, 102-03 (2d Cir. 2015). This Court's focus on credibility

could be a basis for disagreement that would allow an interlocutory appeal.

3.      Reasonable Jurists Could Find the Kerfuffles in Presentation of Evidence
        Had No Effect on the Jury, Especially Given the Curative Instructions.

There were two instances where the Court attributed plaintiff's counsel's presentation of

evidence as a basis. First, the Court noted that when counsel presented the jurors with transcripts

of the deposition of Ashley Hannah-Holloway, there was a redacted copy of plaintiff's "Before"

picture that the Court ruled prejudicial and would not allow in evidence. In fact, I have the copies

of those transcripts, can produce them at any time, and each contains a picture of plaintiff that is

covered by a piece of clear duct tape (or packing tape, but not Scotch tape) on all four sides. The

16

entire matter arose because the Court stopped the presentation of Holloway's deposition noting that, usually, counsel presenting a videotaped deposition would do so with a transcript as an aide in listening. I had considered doing that, and have done it before, but after testing the equipment in the courtroom decided it was not necessary. Tr. 48-49. I was not going to disobey the Court's suggestion, however, and copied seven transcripts for the jury. I had believed that the Court thought it very important that the jury hear the entire video deposition with the transcribed "aid" in listening and thus started at the beginning.

The next day, we began with the aid and Court interrupted, stating in substance, "Mr. Antollino, you do not intend to have the jury listen to the portions of the deposition they have already listened to, do you?" As a trial lawyer, I heard a pregnant question and responded appropriately. I immediately advanced to the point where I had left off. On the other hand, I didn't think those "listening aides" were necessary in the first place, and the only reason the picture of plaintiff got in there was that it got caught up in the copying and by the time I noticed it, Fedex had closed for the evening, so the only alternative was to redact the picture. Otherwise I would not have the "listening aide" you had asked for or would be late to court – significantly more than the seven minutes late I was on two of four days of the trial.

When the defense discovered this, *it did not ask for a mistrial.* Rather, the record reflects that the Court asked the defense whether it would be appropriate to poll the jury. Each juror said that he or she had not seen the picture, and juror number 7 even said she was too "afraid to look." The error was corrected and thus harmless.

The other error involved a picture of Flatbush Avenue that had, on the reverse side, a picture of a street camera. The parties exchanged documents to send into the jury and thus it is plaintiff's position that the defense is as equally responsible for that picture to have been sent into

17

the jury room as plaintiff.  Nevertheless, the jury that "somehow" came to this verdict, heard your instructions, and knew it was not supposed to consider evidence not admitted. I had never seen such a conscientious jury do such a thing, and you told them as much. In addition, the picture of the police camera, if seen by the jury would have been harmless error because it found against plaintiff on the only issue that the camera could have recorded and was called attention to at the trial: the beating that plaintiff alleged had occurred in front of the police car after he was hit. You acknowledge in your decision that based on their dismissal of Taqi from the case, and finding Mercado did not use excessive force, the jury did not believe any excessive force occurred in front of the car. But the jury is entitled to believe any party on somethings and not on others, as every court instructs.

Jurors can be expected to follow cautionary instructions, thus your cautionary instruction on these minor mistakes (and they were mistakes, lack of preparation, or just not enough time for an attorney to make a trial go perfectly). *See Richardson v. Marsh*, 481 U.S. 200 (1987); *United States v. Kusek*, 844 F.2d 942, 951 (2d Cir. 1988) (no need for mistrial in light of curative instructions). The defense was happy to accept your curative instructions as opposed to a mistrial, thus have waived this issue, both at trial and in their Rule 59 motion. This issue could lead reasonable jurists to disagree on your finding and is a basis for interlocutory appeal.

III.    If the Retrial Must Take Place, Let's Get to It.

I told the Court on the last day of trial, that except for the treating doctors' opinions, I believed you had not erred in this litigation until you gave post-summation instructions without letting me see them beforehand. I still believe that, and will not appeal the sanctions you levied on me under Rule 16 because it got me moving on this case to attempt to meet you high standard. I surely fell short of those, but do you, as a sworn neutral, want to sit on a retrial of the case against

18

Belardo after writing that decision? You told the jury that you "have no opinion as to the facts" in your instructions, but you have developed them since.  I have never asked and probably will never ask a judge to recuse itself, and will not here. But would it not be better for you as a neutral to certify this for interlocutory appeal than to strain neutrality on a retrial on the case against Belardo? You quoted Justice Frankfurter in your decision that "there comes a point where [the] Court should not be ignorant as judges of what we know as men." *Watts v. Indiana*, 338 U.S. 49 (1949). Notably, Justice Frankfurter's statement in that case concerned a man interrogated by the police, and the words that precede his statement are that "[t]here is torture of mind as well as body; the will is as much affected by fear as by force." *Id*. Is that not what happened in this case to Lerin Pierce on Labor Day 2012? Though you see it differently than he did, would you feel comfortable retrying the case when you can simplify matters and send it up on appeal?

Only you can answer this question. You are not just a judge, but as Justice Frankfurter said, "not ignorant of what you know" as a man.

19

**CONCLUSION**

Plaintiff asks that you to certify an interlocutory appeal to save judicial resources and avoid

having to present the Circuit, potentially, a constitutional question.

Dated:          Glendale, New York
                January 16, 2018

                              Respectfully submitted,

                         LAW OFFICE OF DANIEL A NANAU, P.C.

                         _____
                              DANIEL A NANAU

Dated:          New York, New York
                January 16, 2018

                         _____
                              GREGORY ANTOLLINO, ESQ.

                         ATTORNEYS FOR PLAINTIFF

20